J. M. W. JONES STATIONERY AND PAPER COMPANY, *et al.*, v. M. H. CASE, *et al.*

PERSONAL PROPERTY, *in Custodia Legis.* Where personal property has been levied upon by a constable holding a valid execution, it is not while in such possession subject to levy by any other officer (constable, sheriff or marshal) holding process from the same or another court.

*Error from Shawnee District Court.*

ACTION under § 525 of the code, upon an agreed statement of facts filed in the office of the clerk of the district court, January 17, 1881, from which it appears, among other things, that —

On the 10th day of November, 1880, executions were duly issued and delivered to A. Kuykendall, a constable of the city

of Topeka, in the following cases, to wit: M. H. Case v. George O. Wilmarth, Williamson-Stewart Paper Company v. George O. Wilmarth, T. J. Kellam & Co. v. George O. Wilmarth — all the goods of Wilmarth being at the time of the issuance and delivery of the executions in the above cases, in possession of Constable F. N. Miller, on attachment in the case of John Foley v. George O. Wilmarth. Kuykendall levied his executions on the goods of Wilmarth in the possession of Miller in the order above named, subject to the attachment of Foley, previously levied by Miller. After an acknowledgment by Constable Miller of the knowledge of Constable Kuykendall's levies as aforesaid, and a refusal by Constable Miller to turn over the goods or any of them to Kuykendall to satisfy his executions, Kuykendall left the goods in the possession of Miller. Afterward, executions were duly issued and delivered to Constable Miller in the following cases: Western News Company v. George O. Wilmarth, James Douglas v. George O. Wilmarth, J. M. W. Jones v. George O. Wilmarth, Reynolds & Reynolds v. George O. Wilmarth; and said Constable Miller thereupon levied said executions, in the order named above, on the goods before levied upon by Constable Kuykendall as aforesaid. Afterward, Miller sold sufficient goods to satisfy the attachment of Foley held by him, and thereupon Constable Kuykendall claimed the balance of the goods under his levies on the executions as aforesaid. Constable Miller refused to turn over the goods, because he claimed that his levies, made subsequent to Kuykendall's levies, were the prior liens. Thereupon an agreement was made in all these cases by counsel for the respective plaintiffs, a copy of which agreement is hereto attached, and made a part of this statement of facts, marked "A." After the making of said agreement, the goods of said Wilmarth were sold thereunder, and the proceeds of said sale, to wit, the sum of $225, were by said Constable Kuykendall duly deposited in the Topeka Bank, to await the order of the court, under the said agreement.

Trial by the court, at the April Term, 1881, when the court held and adjudged that —

The levies of the executions by Constable Kuykendall on the goods of said George O. Wilmarth in the cases of M. H. Case against said Wilmarth, Williamson-Stewart Paper Company against said Wilwarth, and T. J. Kellam & Co. against said Wilmarth, respectively, were prior and superior liens on

said goods to the liens on said goods obtained by virtue of the levies thereon made by Constable Miller in the cases of Western News Company against said Wilmarth, James Douglas against said Wilmarth, Kate Douglas against said Wilmarth, J. M. W. Jones Stationery and Paper Company against said Wilmarth, and Reynolds & Reynolds against said Wilmarth, respectively. It is therefore considered, ordered and adjudged by the court that the money, to wit, two hundred and twenty-five dollars, realized from the sale of the said goods of George O. Wilmarth by Constable Kuykendall, on executions in his hands as aforesaid, and which said money was deposited in the Topeka Bank, be applied by said Constable Kuykendall — first, to the costs of this action; second, to the satisfaction of the judgment in the case of M. H. Case against said Wilmarth, and the costs therein; third, to the satisfaction of the judgment in the case of Williamson-Stewart Paper Company against said Wilmarth, and costs therein; fourth, to the satisfaction of the judgment in the case of T. J. Kellam & Co. against said Wilmarth, and the costs therein; fifth, the remainder of said money, if any there be, be applied to the satisfaction of the judgments in the cases of the Western News Company against said Wilmarth, James Douglas against said Wilmarth, Kate Douglas against said Wilmarth, J. W. M. Jones Stationery and Paper Company against said Wilmarth, and Reynolds & Reynolds against said Wilmarth, in the order herein named.

The *J. M. W. Jones Stationery and Paper Company*, and four others, excepted, and have brought the case here.

*Webb & Sowers*, for plaintiffs in error:

When property is once in the custody of the law by process from a court of competent jurisdiction, it cannot be levied on by officers under process of any other court of coördinate jurisdiction, whether state or federal. (11 R. I. 86; 10 Pet. 400; 13 id. 136; 9 Wheat. 532; 1 Curt. C. C. 178; 3 Wall. 334, 341; Freeman on Ex., § 135.)

Miller's possession was that of the law; no one could interfere with it. It could not be taken from him; and this being true, Kuykendall *could not make a levy* that would bind the property. Goods and chattels are bound from the time

they are seized in execution. (Civil Code, § 444.)   If Kuy-
kendall could not *seize* the goods, he could not make a levy
that would bind the property as against anyone not having
notice, whether claiming as subsequent innocent purchasers
from the judgment debtor, or as judgment creditors seeking
to collect their judgments by valid process and valid service
thereof.   In order to make a valid levy, the property must
be where the officer can control it.  (19 Wend. 495; 2 Hill, 666.)
The property was under the control of Miller, and Kuykendall
could not exercise any dominion over it whatever; and unless
the latter could do so, he could not and did not make any
levy on the property.  (35 Ala. 668; 31 Ill. 120; 58 Mo. 573;
25 Iowa, 464.)

Kuykendall's subsequent demand for the "balance of the
goods" clearly shows that up to that time he had no posses-
sion and no control whatever over the property, or any part
thereof, but that his so-called levy was a mere "pen-and-ink
levy," and that is not sufficient.  (7 Ala. 619; 42 Ill. 100.)

*Case & Moss*, for defendants in error:

In Freeman on Executions, § 135, (cited by plaintiffs,) the
text-writer lays down a proposition that is not supported by
a single one of the authorities cited, except as to the comity
between the state and federal courts.

After a careful examination, we have been unable to find
but one case fairly in point with the case at bar, which is *Ben-
son v. Berry*, 55 Barb. 620.

The opinion of the court was delivered by

BREWER, J.: There is but a single question in this case.
Under process regular and valid, a constable levied upon
certain personal property; thereafter, under process from a
different court, another constable attempted to levy upon the
same property while in the possession of the first constable.
Was such attempted second levy good?   In other words, is
property duly levied on and in the possession of the officer
making the levy, subject to levy by another officer holding

process from the same or a different court? So far as to the form of the actions and the regularity of the proceedings, the agreed statement shuts them out from consideration, and leaves to us the single question above named.

Reluctantly we answer this question in the negative; it is a general truth that when property has been once seized and taken into possession by any officer under any valid process, it is *in custodia legis*, and beyond the reach of further touch or attack except as prescribed by statute. "In general, when things are *in custodia legis*, they cannot be interfered with by a private person or by another officer acting under the authority of a different court and jurisdiction; they are in the custody of the law until the proper time of their sale, and for such a reasonable time thereafter as may be necessary for the purchaser to remove them. During this time they are beyond the reach of seizure by any other execution, attachment, or any other writ." (Herman on Executions, § 173.) The same doctrine is affirmed in Freeman on Executions, § 135, and supported by a large number of authorities cited by the author. It is true the authorities cited refer generally to cases in which process issues from courts of different jurisdictions, but the principle which underlies and determines those cases controls here. The principle is this: In order to make a levy there must be possession — at least this is true of personal property. Bouvier's Dictionary (vol. 2, page 39) says that "in order to make a valid levy on personal property the sheriff must have it within his power and control;" in other words, in order to make a valid levy, the officer levying must have full and exclusive possession. It matters not what outside or ultimate rights there may be, the officer levying an execution upon personal property must have that property in his absolute and exclusive possession, and this partially at least for his own protection, because he becomes responsible for the property to the plaintiff in his execution. A levy means this and nothing else. (Civil Code, § 444; *Goode v. Longmire*, 35 Ala. 668; *Davidson v. Waldron*, 31 Ill. 120; *Douglas v. Orr*, 58 Mo. 573; *Allen v. McCalla*, 25 Iowa, 464.) And secondly, when

property is thus levied upon, when it is in possession of an officer of the law, when it is as the law books say *in custodia legis*, it is safe from touch or seizure. Of course we are not now considering direct proceedings, such as replevin, etc. It matters not whether the officer in possession be a constable, a sheriff, or a receiver—it is still *in custodia legis*. It is true the remedies may be different whether the possession be that of a constable or a receiver, but still the ultimate fact is the same, that the possession is the possession of the law. Such possession when once established is absolute and exclusive; it cannot be interfered with, it cannot be divided.

When a sheriff has levied, a marshal cannot touch, and *vice versa;* when a sheriff has levied, a constable cannot touch, and *vice versa;* when a constable has levied, no other constable can touch. The levy made must in some way be carried out to completion, whether by sale of the property or by payment of the judgment before any other legal process can attach, because if the first levy implies absolute and exclusive possession, there is nothing for the second levy to touch. There is no provision of statute for dividing the possession. The first officer owes no duty to the second officer; none to the plaintiff in the last judgment. If the process in his hands is satisfied—and it may be satisfied before and without any sale—or if the plaintiff in the judgment directs the return of the process, his duties are discharged, save that the property unsold he must return to the defendant. By no statute is he required or authorized to hold it for the benefit of any other constable, or the plaintiff in any other judgment. The defendant has a right to it by reason of his ownership, and no statute casts any right upon the officer to retain possession for the benefit of any other officer, or will protect him against an action of the defendant for refusing to return it to him. It certainly would not be just for the second officer to charge him with the responsibility of a second levy, when he can take no possession, cannot interfere with the possession of the first officer, cannot know absolutely when that possession will cease, and when the first officer owes him no duty, for it

would be casting upon him a responsibility without giving him the power of protecting himself, and throwing him upon the mercy of another officer, who owes him no duty, and may have no desire to assist him.    The case of *Benson v. Berry*, 55 Barb. 620, seems to be authority in favor of the defendant in error, but that decision may find warrant in the special statutes of New York, and if not so authorized, is in conflict with the principles underlying the authorities cited in Herman and Freeman, above noticed, as well as with the general rules determining the scope and effect of a levy.

It might be well if there were a statute making provision for a second levy, and requiring the officer making the levy to retain the property for the second officer, after his own process has been satisfied, and making the sureties on his bond responsible for delinquencies in that respect.    Such a provision would doubtless be in the interests of justice, for now the only security to the second judgment creditor seems to be in the provision that the first officer shall only levy upon property apparently sufficient to satisfy his debt, and this provision will often be found inadequate to secure the just rights of all; but until the legislature does make some such statutory provision, it seems that the absolute possession required to perfect a levy prevents any further seizure by any other officer.

The judgment of the district court will therefore be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

The costs, as by the stipulation, will be paid out of the proceeds of the property.

All the Justices concurring.