J. M. W. Jones Stationery and Paper Company, *et al.*, v. F. G. Hentig.

Money *in Custodia Legis; Priorities of Rights.* A constable, M., who held an order of attachment against W., levied the same upon certain property belonging to W., and took the same into his possession. Afterward, Constable K. attempted to levy an execution against W. upon the same property, and did everything necessary to be done in order to make the levy good and valid, except that he did not obtain the immediate possession of the property. Afterward, Constable M., while still holding the possession of the property, levied another execution against W. upon the property. Constable M. then sold a sufficient amount of the property to satisfy the attachment, and continued to hold the remainder of the property in his possession. The plaintiffs in the executions then agreed that Constable K. should take the property still in the possession of Constable M. into his (K.'s) possession, and should advertise and sell the same, and dispose of the proceeds thereof in satisfying the executions, in the order as should be determined by the district court in an action to be instituted for that purpose in that court between the plaintiffs in the exe-

cutions. This agreement was fully carried out, and the district court decided that the proceeds of the sale, $225, should be paid to the execution plaintiff, whom Constable K. represented. The other execution plaintiff then took the case to the supreme court, where the judgment of the district court was reversed, and it was held by the supreme court that the execution plaintiff represented by Constable M. was entitled to the proceeds of such sale, and the case was remanded to the district court for further proceedings. Afterward, the execution debtor assigned his interest in the proceeds of said sale to H., and H. demanded such proceeds from Constable K., and Constable K. then commenced this action, which is an action in the nature of a bill of interpleader, for the purpose of having the question determined by the district court as to whom Constable K. should pay said proceeds. The district court decided in favor of H., and rendered judgment accordingly. *Held*, Error; that the priorities of rights with reference to these proceeds are as follows: First, the execution plaintiff represented by Constable M.; second, the execution plaintiff represented by Constable K.; third, H.

*Error from Shawnee District Court.*

THE facts of this case appear in 26 Kas. 299, *et seq.*, and in the opinion, *infra.* July 10, 1882, defendant *Hentig* recovered a judgment against the plaintiffs, who bring the case here.

*L. J. Webb*, and *D. E. Sowers*, for plaintiffs in error.

*F. G. Hentig*, defendant in error for himself.

The opinion of the court was delivered by

VALENTINE, J.: This case grows out of the same facts as are reported in the case of *Stationery and Paper Co. v. Case*, 26 Kas. 299, together with certain other and additional facts, which will be mentioned hereafter in this opinion. The facts of this case, stated briefly, are as follows: Sometime in the year 1880, F. N. Miller, a constable, of Topeka, levied an attachment, issued in a certain case, in which John Foley was the plaintiff and George O. Wilmarth was the defendant, upon certain goods belonging to George O. Wilmarth. Afterward, and while the goods were still in the possession of Constable Miller, A. Kuykendall, another constable, attempted to levy three executions upon them,

Statement of facts.

which executions, in the aggregate, amounted to $453 and costs. The plaintiffs in these executions were: (1) M. H. Case; (2) The Williamson-Stewart Paper Co.; and (3) T. J. Kellam & Co. George O. Wilmarth was the defendant in all these executions. Afterward, Constable Miller levied five executions upon the same property, which excecutions amounted, in the aggregate, to $332 and costs. The plaintiffs in these last-mentioned executions were as follows: (1) The Western News Co.; (2) James Douglas; (3) J. M. W. Jones Stationery and Paper Co.; (4) Reynolds & Reynolds; and (5) Kate Douglas. George O. Wilmarth was the defendant in all these executions. Afterward, Constable Miller sold a sufficient amount of these goods to satisfy the attachment in the case of Foley v. Wilmarth; and there still remained in his possession a portion of the goods, of the value of about $225. The question then arose as to which had the superior right to the possession of these goods still remaining unsold, and the prior lien thereon — Constable Miller, or Constable Kuykendall; and, to save costs and expenses and much litigation, it was agreed by the plaintiffs in all these executions that Constable Kuykendall might take the possession of the goods under his executions, and advertise them for sale, and sell them, and deposit the proceeds of the sale in the Topeka bank; and that the question as to which of the two constables, and as to which of the two sets of plaintiffs in the executions, had the superior right to the possession of the goods, and the prior right to the proceeds of the sale thereof, should be submitted to the district court for its determination. This entire agreement was strictly complied with and carried out by the parties and the constables. Constable Kuykendall took the possession of the goods, advertised them for sale and sold the same for $225, and deposited the proceeds thereof in the Topeka bank; and the question of the priority of rights and of liens was submitted to the district court for its determination; which court decided that Constable Kuykendall, and the parties whom he represented, had the prior right with respect to the property, and the prior right to receive

the proceeds thereof. The case was then taken to the supreme court, which reversed the decision of the district court, holding that Constable Miller, and the plaintiffs in execution whom he represented, had the prior right to the goods, and to the proceeds thereof. (*Stationery and Paper Co. v. Case*, 26 Kas. 299.) After the case had been so reversed, and after it had been remanded to the district court, George O. Wilmarth, the execution debtor in all these cases, transferred his interest in the proceeds of the sale of the goods to F. G. Hentig, by executing the following instrument in writing, to wit:

"TOPEKA, KANSAS, November 5, 1881.

*A. Kuykendall to G. O. Wilmarth*, DR.
To amount of my goods sold by you as constable, - - - $225.

For value received, I hereby assign and transfer to F. G. Hentig all my right, title and interest to and in the above account, and authorize him to collect the same for his own use and benefit.          GEORGE O. WILMARTH."

Hentig then demanded the money—said proceeds—of Kuykendall, and Kuykendall then commenced this action in the nature of a bill of interpleader, to have the question determined as to who was entitled to receive the money. The court below decided that Hentig was entitled to receive the same; and the plaintiffs in error now bring the case to this court for the purpose of having the decision of the court below reversed.

We think the court below committed error; for, whoever may be entitled to the proceeds of said goods, we think it certainly cannot be Hentig. When Constable Miller first levied his attachment upon the goods, he obtained a lien thereon, and a right to the possession thereof, paramount to the adverse claims of all other persons; and, as against Miller, the constable; and Foley, the plaintiff in the attachment, Constable Kuykendall and the parties whom he represented could not, and did not, obtain any interest in the goods. Kuykendall's attempted levies upon the goods were at that time as against Miller and the parties whom he represented, ineffectual and void. The subsequent levies, however, of the subsequent executions held by Miller, were valid and bind-

ing, although of course they were subsequent in time and subsequent in right to the levy of Foley's attachment; and there has nothing transpired since that time to destroy or invalidate these levies made by Miller, except the subsequent agreement had between all the plaintiffs, and the proceedings had under such agreement. Afterward, as previously stated, Kuykendall, by virtue of his levies of the executions which he held in his hands, and by virtue of the agreement of the parties, obtained the possession of the goods, and advertised the same for sale, and sold them. Now, as against Miller, and the parties whom he represented, this did not give Kuykendall, and the parties whom he represented, any priority of right to the goods, or to the proceeds thereof. Really, as between Miller and the parties whom he represented, on the one side, and Kuykendall and the parties whom he represented, on the other side, the levies made by Kuykendall must be treated as void. (*Stationery and Paper Co. v. Case*, 26 Kas. 299.) But it does not follow from this, that as between Kuykendall and the parties whom he represented, on the one side, and Geo. O. Wilmarth and his assignee, Hentig, on the other, that the levies made by Kuykendall must still be treated as void. Kuykendall attempted, in good faith, to levy upon the goods; he did at the time everything that was necessary to be done in order to make the levy valid, except that he did not get the immediate possession of the property; but afterward, and by virtue of his levies and of the said agreement he did get the full, complete and absolute possession of the property. This, we would think, would be sufficient, as against Wilmarth and his assignee, to make the levies made by Kuykendall valid. Indeed, as against Wilmarth and his assignee, we would think that we should consider that all the levies made by both Miller and Kuykendall were valid. Of course, when we come to determine the priorities of rights as between the parties represented by Miller on the one side, and the parties represented by Kuykendall on the other side, we must say that the rights of the parties represented by Miller are paramount. But when we come to consider the priori-

ties of rights as between Wilmarth's assignee on the one side, and any of the other parties or persons on the other side, we must say that the rights of all the other parties and persons, except those of Wilmarth himself, are paramount to the rights of Wilmarth's assignee, Hentig. Hentig is now asking for the money which Kuykendall received on the sale of said goods. But when Kuykendall received it, did he not have the right as against Wilmarth to appropriate it to the satisfaction of the executions which he then held in his hands against Wilmarth? and this, even though his prior levies may have been void. A constable has a right to appropriate any money of the execution debtor, which may come into his constable's hands, to the satisfaction of any execution which the constable may hold against the execution debtor. At this time Hentig had no interest in the matter. The assignment to him had not yet been executed. We would think, from the agreed statement of facts and the admission of the parties, that the priorities of the rights of the parties with reference to the proceeds of the sale made by Kuykendall are as follows: (1) The Western News Co.; (2) James Douglas; (3) J. M. W. Jones Stationery and Paper Co.; (4) Reynolds & Reynolds; (5) Kate Douglas; (6) M. H. Case; (7) Williamson-Stewart Paper Co.; (8) T. J. Kellam & Co.; and (9) F. G. Hentig, assignee of Geo. O. Wilmarth. Foley's claim was satisfied out of the proceeds of the sale made by Constable Miller. Foley, of course, had a lien prior to the claims of any of the other parties. But his lien has been satisfied.

Money in custodia legis; priorities of rights.

This case is an equitable proceeding, and we think we should look upon the rights of all the parties, so far as legal principles will permit, in a purely equitable manner; and, doing so, we think that there is nothing as between Hentig, the assignee of Wilmarth, on the one side, and the judgment creditors of Wilmarth, on the other side, that should render any of the proceedings had in this case void. Kuykendall's levies can be said to be void only as against those who claim under Miller's levies. We think that all the proceedings had in this

case should be treated as valid as against Wilmarth's assignee; and the proceeds of the sale of Wilmarth's goods should be paid out to the parties in accordance with their respective priorities, as we have indicated.

The judgment of the court below will be reversed, and cause remanded for further proceedings, in accordance with this opinion.

All the Justices concurring.