PATTERSON *et al.*, *Plaintiffs in Error*, v. STEPHENSON.

**Successive Attachments:** PRIORITY OF WRITS. Successive writs of attachment in the hands of different officers may be levied on the same goods, and in the distribution of the proceeds will be entitled to priority in the order in which the levies are made. The possession of the officer making the first levy is not to be disturbed, but the subsequent levies are to be made by notifying him and by making return of the levies upon the respective writs. Every levy so made will hold the surplus of the proceeds left after satisfying all older levies.

*Error to Daviess Circuit Court.*—HON. S. A. RICHARDSON, Judge.

REVERSED.

*Joshua F. Hicklin* for plaintiffs in error.

Plaintiffs in error did all they could to acquire and retain a lien on the goods. By their superior diligence, they found and got them before Bailey, Wood & Co. They could not have sued in justice's court, and thereby got their writ in the hands of the constable that first took goods in his possession by virtue of writs first issued by justice. The goods could not have been taken by sheriff from constable, nor could the constable have been garnished. R. S. 1879, § 2519.

The sheriff performed every act in reference to the goods that the constable did, in the way of a levy.

Section 447, Revised Statutes, permits and invites equitable interference on the part of the circuit court in this case. The controversy should, under said section, have been determined " as right and justice required," and not upon the theory of defendants in error, to-wit: That none but the constable, he being first in possession, could make a valid levy, for the reason that the same chattel is not susceptible of a seizure and possession by different officers at the same time. This statute shows on its face, by

referring to different courts of co-ordinate jurisdiction and courts of general and limited jurisdiction, that · different officers may have a valid seizure of the same property at the same time. If but one officer can have a levy of the same chattels at the same time, then the manifest intent of the legislature is defeated.

The constable's possession of the goods by virtue of former writs could not be interfered with by the sheriff, but the latter's acts operated as a valid attachment of the remainder of the goods after former attachers were satisfied, to the exclusion of those who came afterward. *Dunlop v. Patterson F. Ins. Co.*, 6 Reporter 374; s. c., 30 Am. Rep. 283.

*Wm. M. Rush, Jr.*, for Bailey, Wood & Co.

When goods and chattels are seized by one official under a writ from a court having jurisdiction of the cause, they are in the custody of the law until the proper time for their sale, and during this time are beyond the reach of seizure by another writ in the hands of another officer. Crocker on Sheriffs, 205, § 449; *Metzner v. Graham*, 57 Mo. 404; *Freeman v. Howe*, 24 How. 450; *Taylor v. Carryl*, . 20 How. 583; s. c., 24 Pa. St. 259; *Hagan ' v. Lucas*, 10 Pet. 400; *Buck v. Colbath*, 3 Wall. 334; *Ship Robert Fulton*, 1 Paine 620; *Ship Oliver Jordon*, 2 Curtis 414; *Harris v. Dennie*, 3 Pet. 292; Drake on Attach., § 251. *Bruce v. Vogel*, 38 Mo. 100, was a case of levy upon real estate, of which only constructive possession is taken. If the goods were inaccessible, the party must be summoned as a garnishee. Sub. 4, § 420, R. S. The constable having obtained legal possession of the goods could not be ousted— they were in *custodia legis*, and no act of the sheriff could affect them.

*J. W. Alexander* and *Gillihan & Brosius* for the other defendants in error.

PHILIPS, C.—This is a contest among successive attaching creditors as to the order in which the proceeds of the attached property in the officers' hands shall be distributed. The record is somewhat confused, but enough is shown to indicate that a constable in Daviess county had seized, under a writ of attachment from a justice of the peace, the stock of goods of one James Stephenson. Afterward the plaintiffs in error, Patterson and others, brought suit in the circuit court of said county against said Stephenson, and sued out a writ of attachment, which on the 28th day of November, 1877, the sheriff undertook to execute on the same goods. When he arrived at the store he found the said constable in possession of the storehouse and goods, presumably under the writ of attachment from the justice's court. The constable, without yielding his possession, in conjunction with the sheriff, proceeded on the said 28th day of November, to invoice said goods, each presenting a list. "Both constable and sheriff, not knowing the legal effect of their acts, intended that the sheriff's acts should be and operate as a levy upon the goods, subject to the levy of the constable, if such acts amounted to a legal levy." The constable maintained his possession of the goods and refused to recognize any other act of the sheriff in reference to them. Afterward it appears that Bailey, Wood & Co., and other creditors, instituted separate suits in a justice's court of said county by attachment against said Stephenson, and writs of attachment were levied by said constable on said goods while he held them, with full knowledge on the part of these attaching creditors of the prior acts of said constable and sheriff. The creditors in the justice's court obtained judgment in their suits, and under an order of said justice of the peace the goods were sold by the constable for about $1,200, of which sum about $800 were left in the constable's hands, when plaintiffs in error obtained an interlocutory judgment in their action in the circuit court; all the cases in

the justice's court having in the meantime been transferred to said circuit court pursuant to the provisions of section 50, chapter 11, page 191, Wagner's Statutes.

Afterward, on the 14th day of February, 1878, the plaintiffs, Patterson and others, filed in the circuit court aforesaid a motion setting out, in substance, the facts aforesaid, asking for an order, the effect of which was that after satisfying the attachment liens prior to the date of plaintiffs' levy, to apply the remaining funds in the constable's hands first to the satisfaction of the plaintiffs' debt. In support of this motion the plaintiffs made proof of the facts aforesaid. The court overruled this motion and plaintiffs excepted. Afterward, on the same day, Bailey and others, attaching creditors in said justice's court, filed their motion in said circuit court for an order on said constable to pay over the proceeds of said goods " in the same order as the original writs of attachment against said Stephenson came into his hands and were levied by him." This motion the court sustained, and the plaintiffs in error excepted, and bring the case here on writ of error.

There is no question under the present state of adjuaications, but that the court which first acquires jurisdiction of the subject matter of litigation cannot be ousted of that jurisdiction by any subsequent proceedings instituted in any other jurisdiction. Equally true and well settled is it that an officer, who, under competent process, first seizes property, can hold that property against and to the exclusion of every other officer coming with a writ from whatever quarter, until the satisfaction of the debt for which he seized it, or the process is re-called. *Metzner v. Graham,* 57 Mo. 405 ; *Taylor v. Carryl,* 20 How. (U. S.) 583, 594 ; Drake on Attach., (5 Ed.,) § 267 ; *Freeman v. Howe,* 24 How. (U. S.) 450. And where an officer holds property under a writ of execution or attachment, and a subsequent like writ comes into his hands, he cannot seize and sell such property under the junior writ. He would be liable to the senior execution or attaching creditor for

the value of the property disposed 'of under the junior process, as in case of positive disobedience of the first mandate, or as for a conversion. *Metzner v. Graham, supra.*

The counsel for defendants in error contends with much plausibility, that when the plaintiffs sued out their writ, the property being *pro forma* in the constable's hands under an antecedent writ, was already in *custodia legis*, and, therefore, the sheriff could not legally execute his writ on this property. This argument rests on the postulate that the execution of the writ of attachment is an actual seizure—a caption of the property; and, therefore, another jurisdiction and another officer cannot interfere, by a second writ, without disturbing the prior custody and possibly breaking the peace and producing conflict, confusion and disorder.

The strict logic of this rule would enforce the conclusion that when one officer under a competent writ has seized the property, it is, until the satisfaction of the debt for which the seizure was made, actually withdrawn from the operation of any subsequent writ, even in the hands of the same officer. Literally adhered to, there could be no qualified, simulated or equivalent execution of a second writ. And yet text writers and courts, singularly enough, while denying the right of the imposition of a second writ of attachment from another court by another officer on the property already attached, hold, nevertheless, that the officer first attaching may lay any number of succeeding writs on the property already seized by him, and after satisfying the first writ may apply any residue of the attached property to the remaining debts in their order; and it is also held that separate writs from different jurisdictions may simultaneously be levied on the same property by different officers, so that neither will acquire a priority, but a joint custody. Drake on Attach., §§ 263, 265, 269, and authorities cited.

On principle and reason the validity of successive levies by the same officers on the same property is a recog-

nition of the practical fact that there may be, after a taking into the custody of the law the property of the debtor, an effectual imposition of another writ without an actual caption, or a taking away of the property or an appropriation of it for the time being to the attaching creditor's claim. It is held in such case that the second writ in the hands of the same officer is executed by him, *sub modo*, so "it will be available to hold the surplus after satisfying the previous attachment, or the whole if that (the first) attachment should be dissolved. In such case no overt act on the part of the officer is necessary to effect the second levy, but a return of it on the writ will be sufficient. So, where the property is in the hands of a bailee, the officer who placed it there may make another attachment, without the necessity of an actual seizure, by making return thereof, and giving notice to the bailee." Drake on Attach., § 269. In *Tomlinson v. Collins*, 20 Conn. 364, it is held in such case that the second attachment is valid even without any notice to the bailee.

Evidently the making of a second levy by the same officer is recognized because it does not disturb his custody of the property. If the rule which prevents one officer from levying on goods seized by another officer, rests mainly on the prevention of conflict of jurisdiction and the interference of one officer with the prior custodianship of another, then, on the maxim *cessante ratione legis, cessat ipsa lex*, I can see no reason for the operation or recognition of the rule, where the second levy does not produce such conflict or interference. For it must be borne in mind that the other requirement of the law, that the levying of an attachment is an actual seizure of the property, is satisfied in the case of successive levies by the same officer, by a constructive application of the succeeding writ "to the surplus after satisfying the previous attachment." Why, then, was not the act of the sheriff in the case now under consideration, in taking the invoice of the goods in connection with the constable, "available to hold the sur-

plus after satisfying the previous attachment," made by the constable? The constable had the requisite notice. It in nowise interfered with the prior custody. It produced no conflict, and would lead to no confusion.

In *Dunlop v. Patterson Fire Ins. Co.*, 74 N. Y. 245; s. c., 30 Am. Rep. 283, the court held, after a careful review of the authorities, that money deposited with an officer of the court as special costs, was subject to attachment. This money was in the custody of the law, and held by an officer different from him who came with the writ of attachment. While conceding the fact that the sheriff, under his attachment writ, had no right to remove the property from its custodian, or to meddle with it, yet the court held as this legal custody was only for a limited purpose, and the residuary interest therein, after the object for which it was held should be served, would revert to the debtor, it was, therefore, an assignable interest, and if assignable by the debtor, it was an interest attachable, or one which the law, by its process, would assign to the attaching creditor. Folger, J., (p. 148,) says: "There was power to grant an attachment against the property of the appellant. The money in the hands of the clerk, or a residuary interest in it, was such property. The fund itself could not be taken away from him. It was the right to have from him, after the litigation was ended, the whole or a residue of that money, which was such property. That right was not in the custody of the clerk, so that he could ever retain it, or, of right, pass it to another. An attachment * * , levied upon that, took nothing out of the custody of the clerk, nor meddled with anything in his hands. It seized upon an intangible right by means of the order of the court, and notice to the clerk. Such process and such action upon it made no conflict of jurisdiction between the two courts. The city court held the money, with a conceded right. The officer of the supreme court held the right (under the attachment) to receive it, or some of it, from the clerk, when the city court should see fit to declare

the purpose fully served for which it took it into custody."

It seems from the reading of some of the reported cases that courts have felt the injustice of the rule invoked by the defendants in error in this case, and have sought in some instances to temper it by the supervision of the equity side of the court. The case at bar is a striking illustration of the harshness of the rule. The law recognizes a race of diligence among creditors, and its rewards, as expressed in the maxim, *vigilantibus non dormientibus jura subveniunt. Bruce v. Vogel*, 38 Mo. 100.

Because the claim of the plaintiffs in error was beyond the jurisdiction of the justice's court, they were compelled, by the law, to sue in the circuit court. The sheriff must not touch the goods under this writ, because the constable perchance has seized $1,200 in value on debts of $300, but other creditors with claims of $50 and $100 being within the justice's jurisdiction, can subsequently sue out writs and cut out the process of the superior court, prior in time. In other words, no writ from the circuit court can avail so long as any claim cognizable in the inferior court coming at any day, however slothful, is unsatisfied. This is not equality of right. Such law is not justice. And it is not improbable in the condition of the law touching this question, that the legislature of this State in 1855, enacted the following as a new section to the attachment act: "Where property is attached in several actions, by different plaintiffs, against the same defendant, the court may settle and determine all controversies in relation to the property, and the priority, validity, good faith, force and effect of the different attachments, which may arise between any of the plaintiffs, and may dissolve any attachment, partially or wholly, or postpone it to another, or make such order in the premises as right and justice may require. If the writs issued from different courts of co-ordinate jurisdiction, such controversies shall be determined by that court out of which the first writ of attachment was issued; in order whereto, the cases originating

in the other court shall be transferred to it, and shall thence-forth be there heard, tried and determined in all their parts, as if they had been instituted therein. If any such controversy arise between a plaintiff in an action instituted in a court of general jurisdiction, and a plaintiff in an action instituted in a court of limited jurisdiction, the matter shall be determined by the former court, to which the action commenced in the latter shall be transferred. And when the defendant has been notified by publication, and does not appear, any plaintiff, in the circumstances contemplated in this section, may make any defense to any previous attachment, or to the action, which the defendant might; but no judgment on any issue made in such manner shall be binding on the defendant personally, or bar the plaintiff in the action so contested by an opposing plaintiff from again suing the defendant on the same cause of action."

This section was carried forward into subsequent revisions of the statute. Gen. St. 1865, § 50, ch. 141; R. S. 1879, § 447.

It is manifest from this section that the legislature contemplated not only that the same property might be " attached in several actions by different plaintiffs against the same defendant " under process from the same court; and " from different courts of co-ordinate jurisdiction," and that it might be likewise attached " in an action instituted in a court of general jurisdiction," and " in an action instituted in a court of limited jurisdiction." In the latter case the whole controversy between such successive attaching creditors is to be transferred to the court of general jurisdiction to " make such order in the premises as right and justice may require."

The record in this case shows that the constable and sheriff, when they met in the store-house, acted intelligently and conservatively, in the spirit of this statute. " Not knowing the legal effect of such acts, they intended that the sheriff's acts should be and operate as a levy

22—77

upon the goods, subject to the levy of the constable, if such acts amounted to a legal levy." All the cases in the justice's court having been transferred under said statute to the circuit court, it was, in my opinion, the plain duty of the court to establish by its order the priority of the attachments, and direct the officers how and to whom to distribute the fund admitted to be in the constable's hands; and, in the absence of any ascertained fraud, to direct the distribution to be made in the order of the successive levies, including that from the circuit court.

In this view, the trial court erred in overruling plaintiffs' motion, and in sustaining that in favor of Bailey and others. Its judgment is, therefore, reversed and remanded with directions to proceed in said cause in conformity to this opinion. All concur.