PITKIN & BROOKS ET AL., APPELLANTS, V. BURNHAM, HANNA, MUNGER & COMPANY ET AL., APPELLEES.

FILED JULY 10, 1901. No. 9,451.

1. **Judgment Confessed to Defraud Creditors, Voidable, Not Void.** Judgment confessed for the purpose and with the intent to defraud creditors of the judgment debtor, the court having jurisdiction over the parties and the subject-matter, is not absolutely void, but voidable only at the instance of the person or persons attempted to be defrauded, in a proper proceeding brought for the purpose of avoiding such judgment.

2. **Execution Issued on Such Judgment Can Not Be Treated as a Nullity.** An execution issued on such judgment for like purpose, and levied by an executive officer on the property of the judgment debtor, can not be treated as a mere nullity by another officer holding process against the judgment debtor issued out of a different court and the possession of the officer mak-

29

ing the first levy forcibly wrested from him for the purpose of levying thereon the process subsequently issued and held by such officer.

3. **Property Taken Under Such Execution In Custodia Legis.** A legal levy on personal property of a writ of execution valid on its face issued on a judgment voidable only and not void and taking possession of the property levied on by the officer serving the writ places the property *in custodia legis*.

4. **Test of Liability Is: Was Officer Trespasser?** The test of the validity of a levy upon personal property is whether or not the acts of the officers under his writ have been such as would make him liable as trespasser but for the protection afforded by such writ. *Grand Island Banking Co. v. Costello*, 45 Nebr., 119.

5. **Constable Acquires Special Property by Levy.** When a constable has levied on personal property under a valid process and taken the property in his possession he has a special property therein which can not be interfered with or taken away by another officer holding another process against the same debtor.

6. **Judgment Described in First Paragraph, May Be Vacated.** When property has been levied upon under an execution issued on a judgment confessed for the purpose of defrauding the creditors of the judgment debtor such levy may be vacated and held for naught as against the creditors thus attempted to be defrauded in any proper proceeding brought for that purpose.

7. **Property Held Under Such Levy, Not Subject to Lawful Second Levy.** When personal property has been legally levied upon, during the existence of the lien created thereby, it is not subject to a lawful second levy by another officer under a different process, and when a subsequent levy by another officer is accomplished by force or fraudulent means or by an unauthorized procedure such levy is illegal and void.

8. **Officer May Make Successive Levies or May Be Garnished.** When personal property has been lawfully seized under mesne or final process successive levies on the same property may be made thereon by the same officer; or by garnishment proceedings such officer may be charged as garnishee and the property bound from the time of the service of summons in garnishment on him.

9. **Proceeding Binds Garnishee From Service of Notice.** Proceedings in garnishment bind the garnishee from the time of the service of the notice, and the property in his hands is not thereafter subject to levy and sale on process thereafter issued against the debtor during the continuance of the attachment. *Northfield Knife Co. v. Shapleigh*, 24 Nebr., 635.

APPEAL from the district court for Adams county. Heard below before BEALL, J. *Reversed.*

*Tibbets Bros., Morey & Ferris,* for appellants.

*J. B. Cessna, Batty, Dungan & Burton, M. A. Hartigan, John Hartigan, Smith & Olmstead* and *John C. Stevens, contra.*

HOLCOMB, J.

The present action has its origin in a controversy between creditors of an insolvent merchant in regard to their respective rights in, and priorities to, the proceeds of a sale of a stock of merchandise formerly owned by the insolvent debtor. The plaintiffs, appellants, claim priority by virtue of proceedings taken in attachment and garnishment, and processes issued therein and served on one David Barlass, a constable, who, it is claimed, was in possession of the stock of merchandise under and by virtue of several successive levies of writs of execution issued out of the county court of Adams county on judgments against the debtor by confession which were in favor of several alleged creditors who are not parties to this action. The defendants, appellees, lay claim to the proceeds of the debtor's property by reason of several writs of attachment levied or attempted to be levied directly thereon by the sheriff of said county in whose hands they were placed, and who, ignoring the possession of the constable, by acts amounting to force and violence wrested from him the possession of the property the proceeds of which are in dispute.

The salient features of the case as we gather them from the record appear as follows: One Rollins, a retail merchant, was indebted in various sums to all the parties to this action save the sheriff and constable; and being in failing circumstances went before the county court of said county at about 2 o'clock in the morning, and confessed judgments in favor of different parties, who it is claimed,

were relatives of the debtor and who were represented by attorney, for various sums of money alleged to be due and owing such parties aggregating in amount between sixteen and seventeen thousand dollars. Immediately after the confession of the several judgments and the entry thereof executions were issued thereon and delivered to the said David Barlass, constable, for service. In the execution of these several writs the constable went to the building containing the stock of goods of the judgment debtor and served the same by taking possession of the property, declaring that by virtue of the executions which he held and for their satisfaction he levied on all the property in the building; after fastening the doors and windows, putting a locked padlock on the front door, and posting a notice to the effect that the store was closed on executions levied on the property therein, he temporarily departed from the building. While the constable was thus absent, the sheriff of the county, in whose hands there had been placed several writs of attachment issued at the instance of the appellees, who are creditors of the judgment debtor or some of them, knowing of the possession taken by the constable, his levy of the writs of execution, and that he claimed the property by virtue of the levies he had made thereon and the actual possession taken thereunder, entered the building and in form levied on the stock of goods under the writs of attachment he then held, in utter disregard of the rights and claims and possession of the constable under his several executions theretofore levied. It appears that some one, whether the sheriff or some person for him, is not disclosed by the record, had broken open the rear door of the building and by this means the sheriff gained an entrance to the building. When the constable sought to regain possession, he was barred from entrance into the building until finally, after gaining admission by strategy, he was forcibly ejected therefrom and by superior force denied any further control or possession of the property on which he had levied the executions placed in his hands for service. Immediately following the levy by the

sheriff of the attachment writs in the manner stated, the appellants, as creditors also of the judgment debtor, instituted attachment and garnishment proceedings for the recovery of the debts due them and garnisheed the constable as having in his possession property and goods of the debtor subject to attachment which could not otherwise be reached. Later on the judgments rendered against Rollins by confession were satisfied of record and the constable directed to return the executions issued thereon, which was accordingly done, with a return indorsed thereon showing what had been done in pursuance thereof, and that the constable, while the levy was in force, had been garnisheed by other creditors of the judgment debtor as having property in his possession belonging to such debtor. The constable also answered in the garnishment proceedings, disclosing in his answers the facts as to his levy on the property of the debtor under the executions he then held, and the subsequent transactions with reference to the property being wrested from his possession by the sheriff.

In the petition filed in this cause it is alleged: "That during the night between said December 28, 1896, and the following day, said Harry B. Rollins, for the purpose and with the intent of hindering and delaying his said creditors, confessed judgments before the county judge of said county and procured executions to issue thereon forthwith." This allegation is, by the different answers filed, admitted to be true. Because it stands admitted under the pleadings by all the parties to this action that the judgments on which the executions were issued, and by the constable levied on the judgment debtor's property, were confessed for the purpose and with the intent of hindering and delaying the creditors of the judgment debtor, it is contended by those claiming under the levies of the attachment writs made by the sheriff that the judgments and executions issued thereon are mere nullities and wholly void and no rights of any kind were or could be acquired thereunder or thereby, while the other creditors who garnisheed the

Pitkin v. Burnham.

constable while in the constructive possession of the property by virtue of the executions levied thereon insist that the judgments and the executions were valid and binding and the possession of the constable lawful until the time the judgments were satisfied and the execution withdrawn, or until it was judicially determined that the judgments were fraudulent and void as against the creditors of the judgment debtor; that the judgments were at most voidable only, and not void.

A correct decision of the case therefore hinges on the legal status of the property in the possession of the constable under the executions he held, issued on the judgments, which we may, for the purpose of this case, assume to have been fraudulently confessed for the purpose of defrauding the other creditors of the judgment debtor. It is not suggested nor is there anything to warrant the inference that either the county judge entering the judgments by confession or the constable in whose hands the executions were placed for levy and satisfaction of the judgments, acted other than in good faith and in an honest discharge of official duty. If the judgments were fraudulent, the officers connected with their rendition and enforcement are free from any taint of the fraud thus sought to be perpetrated. All parties to this action then acting on the assumption that the judgments by confession were procured for the purpose of defrauding the good-faith creditors of the debtor, what are the rights of the constable in possession of the property under the writs of execution placed in his hands for service and the other good-faith creditors who sought to charge the constable as garnishee so holding the property by a constructive, if not actual, possession before the judgments by confession were satisfied of record and the executions recalled? Or stating the proposition in another way, can the sheriff make a valid levy under the attachment writs placed in his hands for execution on the same property which the constable had levied on, in disregard of the levy and possession of the constable under the executions issued on the judgments

thus fraudulently confessed? Counsel for the appellees take the affirmative of the last proposition and say in their brief: "Property levied upon and taken into possession on judgments fraudulently confessed and executions issued to hinder and delay creditors is not *in custodia legis,* but is subject to another process issued from another court." Counsel for appellants vigorously combat the proposition thus contended for. Let us briefly examine the question. The judgments were not void. They were only voidable. The court had jurisdiction over the parties and over the subject-matter. The judgments on their faces were in all respects regular and valid and the court was possessed of power to render them. The parties were before it and it had jurisdiction of their persons. The judgments were binding on the parties and all the world, save perhaps the creditors of the judgment debtor, who could assail them as being fraudulent and void in so far as by them the property of the debtor was sought to be taken in fraud of their rights. The judgments were not nullities; they were not absolutely and altogether void. They were enforceable except in so far as they conflicted with the rights of the creditors, and as to them they were voidable, and together with any lien on property attempted to be created by an execution issued thereon could be set aside in any proper proceedings and subordinated to the rights of creditors thereby attempted to be defrauded. Says Mr. Freeman in his excellent work on Judgments (4th ed., sec. 116, vol. 1), in speaking of void judgments; that they must be so from one or more of the following causes: "1. Want of jurisdiction over the subject-matter; 2. Want of jurisdiction over the parties to the action, or some of them; or 3. Want of power to grant the relief contained in the judgment." And in Black on Judgments, sec. 170, speaking on the same subjects, it is stated: "Now a void judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights.  *  *  *  On the other

hand, a voidable judgment is one which, though not a mere nullity, is liable to be made void when a person who has a right to proceed in the matter takes the proper steps to have its invalidity declared. It always contains some defect which may become fatal. It carries within it the means of its own overthrow. But unless and until it is duly annulled, it is attended with all the ordinary consequences of a legal judgment. The party against whom it is given may escape its effect as a bar or an obligation, but only by a proper application to have it vacated or reversed. Until that is done, it will be efficacious as a claim, an estoppel, or a source of title. If no proceedings are ever taken against it, it will continue throughout its life to all intents a valid sentence."

Whether the judgment entered by confession and the levy of execution issued thereon were in fact fraudulent and void as to creditors was a question of fact to be determined in a proper proceeding at the instance of those having an interest in the matter upon judicial inquiry and investigation, and before that fact is determined, or before the executions are recalled and the levies abandoned, can it be said that an executive officer of another court, holding process mesne or final, may by his fiat declare the judgment void and a nullity, the executions of no force or vitality and forcibly wrest the property taken under such execution from another officer who, acting in the legitimate sphere of his duties, possesses such powers and rights of equal degree? It would seem to us not; that such action, instead of being calculated to advance the due and orderly administration of justice, would bring about conflict of authority, insecurity, strife and contention and "confusion worse confounded." The executions under which the constable held the property were regular and valid, and in all respects duly levied and free from imperfection, except that the lien created thereby might be subordinated and annulled as to the creditors of the judgment debtor because confessedly fraudulent as to such creditors. The sufficiency of the levy is not questioned and as made comes

entirely within the rule announced by this court in *Grand Island Banking Co. v. Costello,* 45 Nebr., 119 and *Boslow v. Shenberger,* 52 Nebr., 164. In fact counsel rely principally, if not exclusively, on the proposition announced by them and heretofore quoted in support of the right of the attachment creditors to levy on the property, treating the constable's possession as that of the debtor and the writs of execution as nullities and without any force or effect whatever. It is to be borne in mind that the present controversy is not one between bona-fide creditors on the one part and those claiming under judgments fraudulently confessed for the purpose of hindering and defrauding the good-faith creditors. It will not be seriously contended that a judgment creditor of such a judgment who participates in the fraud can not by means of an execution acquire a lien on property or a special interest therein as against the good-faith creditors of the judgment debtor, who, in any proper proceeding brought for the purpose of testing the rights of the respective parties, proves the facts from which the fraudulent intent and purpose may be inferred.

The contest here is between bona-fide creditors, each contending for a superior right to the proceeds of the debtor's property by virtue of steps of a different character taken by them respectively to establish such right. While we are cited to a number of authorities by counsel for appellees which, it is claimed, sustain the proposition contended for by them, in none, so far as our examination has extended, has it been held that property seized by an officer under an execution valid on its face, issued on a judgment voidable only, is subject to seizure by another officer on a process issued out of a different court in entire disregard of the right and custody of the officer holding the first writ; nor do the authorities hold that such property is not *in custodia legis* when taken under a writ on a judgment voidable only or confessed for the purpose of defrauding other creditors. In most of the authorities thus cited the controversy was between parties who

claimed through successive levies by the same officer as
to priority or between those securing a first levy which
was challenged and others who had intervened for the
purpose of challenging the levy so made. To the general
proposition that a levy made for the purpose of satisfying
a judgment confessed for the purpose and with the intent
to defraud creditors may be vacated and held for naught
by those sought to be defrauded we are all agreed. In the
case at bar appellants sought to have the principle applied
and the levies first made by the constable held for naught
as to them, by garnisheeing the constable and thereby ob-
taining a lien on the property in his possession and chal-
lenging the right of the judgment creditors to a superior
lien because of the alleged fraud in the procurement of
such judgments and the executions issued thereon, while
the appellees, through the sheriff, by force and violence
wrested the property from the possession of the constable,
treating the writs under which he held as utterly void. Be-
cause the levy of executions thus made may in a proper ac-
tion be attacked and defeated, it does not necessarily or
logically follow that the execution writs in the hands of the
constable may be treated as a nullity and his possession
that of a trespasser. Had the writs been void or the levy
made illegal, an entirely different question would be pre-
sented. A void judgment or illegal levy would afford the
officer no protection whatever, nor would the property be
*in custodia legis.* The possession of the constable, however,
was lawful. The execution writs were regular and valid
on their face, and the levy was made as required by law.
The judgments were rendered by a court of competent
jurisdiction having the power and authority to act, both
with respect to the person and the subject-matter of the
action. We know of no principle of law that would permit
an executive officer having another writ for service, on the
advice of counsel or otherwise, to declare the possession of
the officer making the first levy wrongful and the judg-
ments and executions under which he acted mere nullities
and his acts thereunder those of a trespasser, and to forci-

bly seize the property, relying upon future investigation to justify his action, upon the assumption that the judgments and executions could be proven to have been confessed and sought to be enforced for the purpose of defrauding other creditors of their lawful demands.    Until successfully challenged by some suitable proceedings, the judgments and the executions issued thereon were valid and enforce- able.    They could not be set aside and disregarded by the mere *ipse dixit* of the officer holding the second writ.    He could not take the law into his own hand, declare the writs void and forcibly dispossess the officer in whose possession he found the property.    Such acts are not only wrongful, but lawless in the extreme, and well calculated to breed strife,    conflict    of    authority,    and    possibly    conse- quences    much    more    serious    in    their    character.       In *Ilsley v. Nichols,* 29 Mass., 269, 275, a case in principle analogous    to    the    present    one,    it    is    said    in    the    opin- ion:    "These    cases    therefore    seem    to    establish    the general    principle,    that    a    valid    and    lawful    act    can    not be    accomplished    by    any    unlawful    means;    and    whenever such unlawful means are resorted to, the law will interpose and afford some suitable remedy, according to the nature of the case, to restore the party injured by these unlawful means, to his rights."    Shaw, C. J., who wrote the opinion, enters into an exhaustive and interesting discussion of the effect and result of levying an attachment writ by means of acts which are wrongful and unlawful and reaches the conclusion that a levy accomplished by such methods is invalid. . We are cited to authorities which hold that the lien arising by the levy of an attachment writ when ob- tained on false grounds will be postponed to the lien of subsequent attachments on the same property by other creditors in good faith (*Kollette v. Seibel,* 26 S. W. Rep. [Tex.], 863; *Bateman v. Ramsey,* 12 S. W. Rep. [Tex.], 235), and that other creditors may set aside an execution issued on a fraudulent judgment.    *Corning v. Dreyfus,* 20 Fed. Rep., 426; *Walton v. First Nat. Bank,* 22 Pac. Rep. [Colo.], 440; *Seibert v. Switzer,* 35 Ohio St., 661;

*Patterson v. Stephenson,* 77 Mo., 329. Our views fully coincide with the authorities cited, but we think counsel has inadvertently overlooked the proper practice by which such questions shall be determined. Can it be done outside of the courts and without judicial inquiry as to the facts on which the lien challenged as fraudulent is based? It is, we think, in this particular regard that the proper remedy of the attaching creditors who rely on the sheriff's wrongful acts and unlawful seizure have been misconceived. Authorities in abundance are cited to the proposition that a judgment may be attacked collaterally for fraud, and that executions issued on such judgments are tainted with the original fraud. While unreservedly acceding to the propositon thus advanced they do not, we think, with all due deference to the learned counsel, control in the disposition of the case at bar. If the property was *in custodia legis* at the time the sheriff wrested it from the possession of the constable, as we think it undoubtedly was, then the validity of the lien by virtue of the executions the constable held and the special property he had therein must be determined by some recognized principle in the enforcement and application of which it will be unnecessary to resort to force, but rather an orderly and lawful procedure by which the rights and interest of all will be fully protected and subserved. The constable being in the lawful possession of the property under valid writs of execution on judgments then in full force, it becomes pertinent to inquire respecting the method of effectuating other liens upon the same property to satisfy other lawful demands, and in what manner can a successful attack be made on the validity of the levies made on the property because of the fraudulent intent and purposes entering into and becoming a part of the judgments by confession and the executions issued thereon. The constable acting within the scope of his authority and under a valid process is as much an officer of the court out of which the process is issued and brings the property into possession lawfully and in the

law's custody as effectually and to the same extent as, though the acts were performed by a sheriff of a state court or a marshal of one of the federal courts. There is no different principle to be applied to the possession of one than the other, and to the lawful possession of either there must be given equal consideration and protection from the courts in matters of controversy growing out of conflicting claims to the same property. The lawful possession of one can not rightfully be invaded and set at naught by the other because of the assumption of arbitrary power to do so. The possession in each instance first taken under a valid process binds the property from the time of taking and brings it *in custodia legis,* to be respected alike by all other officers and courts. Code of Civil Procedure, sec. 477; *Stationery & Paper Co v. Case,* 26 Kan., 299; *McKinney v. Purcell,* 28 Kan., 446; *Gilman v. Williams,* 7 Wis., 287. The property having been levied upon under a valid process by one officer and reduced to possession, he has a special property therein which can not be interfered with or taken away by another officer holding another process against the same debtor. 1 Freeman, Executions [3d ed.], sec. 135; Murfree, Sheriffs, sec. 269; *Tefft v. Stenberg,* 40 Fed. Rep., 2; *Covell v. Heyman,* 111 U. S., 176; *Hagan v. Lucas,* 10 Pet. [U. S.], *400; *Stationery & Paper Co. v. Case, supra.*

In *Gumbel v. Pitkin,* 124 U. S., 131, cited by counsel for appellees, although a United States marshal had levied upon property under an attachment writ from a circuit court of the United States issued and levied on Sunday, and for that reason admittedly invalid, it is held that the property in possession of the marshal under his attachment writ was *in custodia legis* and could not be taken or levied on by a sheriff under process out of the state court, but that the creditor represented by the sheriff must intervene in the action pending in the federal court and there have his right to the property determined and the priority of liens ascertained as between himself and the marshal holding under an illegal levy. Says Mr. Justice Mathews,

who delivered the opinion of the court (p. 144): "In the subsequent case of *Covell v. Heyman*, 111 U. S., 176, it was decided that the principle that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court and under its control for the time being, applies both to a taking by a writ of attachment under a mesne process and to a taking under a writ of execution. It was there also decided that 'property thus levied on by attachment or taken in execution is brought by the writ within the scope of the jurisdiction of the court whose process it is, and as long as it remans in the possession of the officer it is in the custody of the law. It is the bare fact of that possession under claim and color of that authority, without respect to the ultimate right to be asserted otherwise and elsewhere, as already sufficiently explained, that furnishes to the officer complete immunity from the process of every other jurisdiction that attempts to dispossess him.' "

While the property in the case at bar was in the possession of the constable under the levies he had made thereon, it was incapable of a legal and valid levy by another officer under a process, mesne or final, issued out of another court. Possession of personal property is essential and necessary to a valid levy, and two officers can not at the same time hold possession of the same property under two different writs issued out of different courts of co-ordinate jurisdiction. One of the levies so attempted to be made must, in the light of the essential requirements of a valid levy, be held and deemed to be illegal and unavailing. Says Brewer, J., in *Stationery & Paper Co. v. Case, supra,* p. 304: "It matters not whether the officer in possession be a constable, a sheriff, or a receiver—it is still *in custodia legis.* It is true the remedies may be different, whether the possession be that of a constable or a receiver, but still the ultimate fact is the same, that the possession is the possession of the law. Such possession when once established is absolute and exclusive; it cannot be interfered with, it cannot be divided. When a sheriff has levied, a

marshal cannot touch, and *vice versa;* when a sheriff has levied, a constable can not touch, and *vice versa;* when a constable has levied, no other constable can touch.   The levy made must in some way be carried out to completion, whether by sale of the property or by payment of the judgment before any other legal process can attach, because if the first levy implies absolute and exclusive possession, there is nothing for the second levy to touch."   The property, whenever levied upon during the existence of the lien created thereby, not being subject to a lawful second levy by another officer under a different process, it logically follows that a subsequent levy accomplished by force or fraudulent means and by an unauthorized procedure is illegal and void.   Drake, Attachment [7th ed.], sec. 193; *Ilsley v. Nichols,* 29 Mass., 269, 275; *Lewis v. Dillard,* 76 Fed. Rep., 688; 1 Am. & Eng. Ency. Law, p. 927, and cases cited in note 5.

Adherence to the doctrine that but one officer can have the lawful custody of property levied upon under a process placed in his hands for service in nowise militates against the legal or equitable rights and interests of other persons for the satisfaction of demands against the same debtor. The law furnishes a speedy, adequate and effective means for the subjection of the property thus levied upon to all lawful demands, in so far as it is capable of satisfying such demands according to the priority of the liens acquired thereon.   Nor is a party prohibited from challenging and attacking the validity of all prior levies upon any ground which may be found sufficient to vitiate the levy or subordinate the lien to others prior in right even though subsequent in time.   The property having been lawfully seized and brought within the law's custody, successive levies may be made by the officer having the possession of such property, and the property may also be constructively attached and a valid lien acquired thereon by suitable proceedings, in which the officer in possession may be garnisheed, as was done in the case at bar by appellants, as having in his possession goods and chattels of the debtor

subject to attachment. In such case, the attaching creditor acquires a lien thereon, and an interest therein to the same extent and of like effect as though the property had been directly attached in the first instance, subject of course to all prior valid levies existing thereon at the time of serving on the officer summons in garnishment. In *Northfield Knife Co. v. Shapleigh,* 24 Nebr., 635, it is held: "Proceedings in garnishment bind the garnishee from the time of the service of the notice, and the property in his hands is not thereafter subject to levy and sale on process thereafter issued against the debtor during the continuance of the attachment." Says MAXWELL, J., in the opinion (p. 638): "The goods and the party garnisheed being both within the jurisdiction of the court, it will exercise such jurisdiction over them as the necessities of the case may require. We are aware that in *Bigelow v. Andress,* 31 Ill., 322, it was held that garnishment imposed no lien upon the goods in the garnishee's hands and did not put them *in custodia legis.* If this was the rule, proceedings by garnishment would be an expensive farce, which would give the attaching creditor no rights under the attachment. Neither can the right be restricted to the personal liability of the garnishee, as he might be insolvent or unable to pay the value of the property. We hold, therefore, that garnishment is an attachment of the goods in the hands of the garnishee, and that such goods are not subject to levy and sale upon process thereafter levied, during continuance of said attachment." See, also, *Fitzgerald v. Fitzgerald & Mallory Construction Co.,* 44 Nebr., 463, 496; *Grand Island Banking Co. v. Costello,* 45 Nebr., 119; Drake, Attachment [7th ed.], sec. 263; *Bates v. Days,* 17 Fed. Rep., 167, 168; *Locke v. Butler,* 19 Ohio St., 587; *Bailey v. Childs,* 46 Ohio St., 557. In the case last cited, it was decided by the supreme court of Ohio "that the property in the custody of the sheriff was not subject to levy and seizure by the constable. While different attachments of the same property may be made by the same officer (Revised Statutes, sec. 5535), personal property

held under attachment by one officer can not be levied upon under a writ in the hands of another officer.   In order to attach the property in the hands of the sheriff, he should have been proceeded against as a garnishee. *Locke v. Butler,* 19 Ohio St., 587.   His assent to the so-called levy did not change the rule."

Applying the principles deducible from what has heretofore been said to the facts in the case at bar, our conclusions are: (1.) The judgments by confession and the executions issued thereon under which the constable levied on the property, the proceeds of which are in controversy, were not absolutely void, and to be treated as nullities but voidable only at the instance of a bona-fide creditor in a proper proceeding who was being defrauded of his rights by such confessions of judgment and the levy of executions issued thereon on the property of the judgment debtor. (2.) That at the time of the forcible seizure of the property by the sheriff, the constable was in the lawful possession thereof under writs of execution valid and binding on their face and the property was *in custodia legis.* (3.) That the act of the sheriff in forcibly seizing the property was unlawful and unauthorized and rendered the levy attempted to be made thereby illegal and void as against the rights of the constable and those he represented and was ineffectual to deprive him of his special interest in the property by reason of his levy thereon and the liens acquired by the subsequent constructive attachment of the property by garnishment process served on him while lawfully entitled to the possession of such property. (4.) That the property, having been levied upon by the constable under the executions in his hands and the possession thereof taken by him, was not subject to a further levy by the sheriff under writs of attachment issued from another court, while the first levy continued in force and before the judgments were satisfied and the execution recalled. (5.) That the property levied on by the constable and in his possession could only be reached by other creditors by virtue of subsequent levies of mesne or final process made

30

by the same officer, or by attachment of the property by garnishment process served on the constable having in his possession property of the debtor subject to attachment. (6.) That as between those claiming under and through the sheriff by virtue of the levies attempted to be made by him under writs of attachment in the manner stated, and those claiming through garnishment proceedings against the constable as having the lawful possession of the property, the latter, by the process of garnishment, acquired liens on the property seized by the constable superior to the former and are entitled to precedence in the distribution of the proceeds of the sale of such property.

While some other questions are presented in briefs of counsel they are included in, and necessarily disposed of by, what has already been said and will not further be considered.

We are therefore of the opinion that the judgment must be reversed and the cause remanded for further proceedings in harmony with the views herein expressed, which is accordingly done.

REVERSED AND REMANDED.