1. A finding of fact by a trial judge sitting without a jury that finally determines the case often renders findings on intermediate issues unnecessary, and it is not prejudicial error to refuse findings on such issues. For example: In an action for money by an assignee of a claim, after findings for defendant on the question of indebtedness, it is immaterial who owns the claim, and a refusal to find on that issue is not error.

TRIAL BY COURT—SUFFICIENCY OF FINDINGS.

2. Findings that a debtor pledged to its creditor a warehouse receipt for sundry chattels, that the obligation thus secured was not paid at maturity, in consequence of which the creditor sold the chattels pursuant to the terms of the pledge, impliedly finds that the property pledged was delivered to the creditor, as a warehouse receipt stands for the property stored.

BANKRUPTCY—AVOIDANCE OF PREFERENCES.

3. Under the bankruptcy act of 1898 (30 Stat. U. S. 562, c. 541, § 60b), providing for a recovery by the trustee of property given by a bankrupt as a preference, only the trustee can avoid the act and proceed against the one who received the preference.

MATERIALITY OF FINDINGS.

4. A bankrupt having within four months of being adjudged insolvent pledged a warehouse receipt to a bank as security for a note for money then borrowed, with provision that, if the note was not paid at maturity, the bank might sell the security and with the proceeds discharge such note, and credit the surplus on prior notes of the bankrupt to the bank, and the trustee having sold and assigned the claim for the surplus, and the assignee having sued only for such excess—there is no disaffirmance, but a ratification, of the act of the bankrupt; so that the question of the bank having cause to know that a preference was intended is immaterial.

BANKRUPTCY—ESTOPPEL ON CREDITOR TO CLAIM SECURITY.

5. Where a bankrupt pledged a warehouse receipt as security for a note given for money then borrowed, with provision that if such note was not paid at maturity, the pledgee might sell the paper, and, after satisfying such note, apply the surplus proceeds to prior notes, the pledgee, by filing a claim in the bankruptcy proceedings for the full amount of its claim, without giving any credit thereon for such surplus proceeds, is not estopped to claim the same as security when sued therefor; there having been no fraud, the pledgee having at the time of filing the claim received no money from the pledge, and having, shortly after filing its claim, withdrawn it, and received nothing from the bankrupt's estate.

VARYING WRITING BY PAROL—COLLATERAL ORAL AGREEMENT.

6. It may be shown by parol that at the time a warehouse receipt was pledged to secure a loan evidenced by a note it was agreed that the surplus proceeds from the sale of the pledged property, after payment of such note, might be applied on prior notes of the pledgor held by the pledgee, this agreement being oral and collateral to the writing showing the indebtedness.

TIME FOR ENTERING JUDGMENT AFTER FILING FINDINGS.

7. It is not error to enter judgment the day after the findings of fact are filed, where no motion for new trial is pending.

From Multnomah: MELVIN C. GEORGE, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is an action by A. T. Lewis, substituted for J. Crane, to recover money. The complaint states that the defendant, the First National Bank of Portland, and the Oregon Pulp & Paper Co., are corporations; that on July 22, 1901, a petition having been filed in the United States District Court for the District of Oregon praying that the latter corporation might be adjudged a bankrupt, a decree to that effect was rendered therein August 19, 1901, and E. E. Merges duly appointed trustee; that on June 15, 1901, the Oregon Pulp & Paper Co. sold and delivered to defendant paper of the reasonable value of $2,200, which sum it agreed forthwith to pay, but had paid no part thereof except $1,500; that on June 21, 1902, the trustee in bankruptcy, for a valuable consideration, sold, assigned, and transferred such account and claim to plaintiff, no part of which had been paid—wherefore he demands the sum of $700, with interest

thereon from June 15, 1901. The answer denies all the allegations of the complaint, except the existence of the corporations, and that the Oregon Pulp & Paper Co. was adjudged a bankrupt. For a further defense it avers that on June 14 and 25, 1900, the Oregon Pulp & Paper Co. executed to the defendant promissory notes drawing 8 per cent interest, payable in 90 days from such dates, and for the sums of $7,000 and $3,000, respectively; that no payments had been made thereon except the interest on each for nine months and the sum of $410.91 on account of the principal; and that such notes constitute a set-off to the claim alleged in the complaint. The reply states, in effect, that defendant ought not to be permitted to set off any sum alleged to be due on the two notes executed to it by the Oregon Pulp & Paper Co., for that at the time they were given, and long prior thereto, the maker was insolvent, "all of which the defendant had reasonable cause to believe and know and did know"; that with intent to gain a preference, and with knowledge that the Oregon Pulp & Paper Co. intended to give it, the defendant took from such company a mortgage, to secure the payment of the two promissory notes, of certain real and personal property, which security was given with intent to prefer the defendant, as it "had reasonable cause to believe and know and did know"; and that the mortgagor was adjudged a bankrupt within four months thereafter. For a second reply it is averred that defendant ought not to be allowed to assert that any sum due on its two promissory notes constitute a set-off against plaintiff's claim, for that during the months of June and July, 1901, and for a long time prior thereto, the Oregon Pulp & Paper Co. was insolvent, "all of which the defendant at all of said times had reasonable cause to believe and know and did know," notwithstanding which it took from the Oregon Pulp & Paper Co. the goods mentioned in the complaint; and that to allow any part of the two promissory notes to be set off against plaintiff's claim would create a preference over the other creditors of the bankrupt, to plaintiff's damage.

For a third reply it is stated that the defendant ought not to be heard to say that any part of the sums due on its promissory

notes should be set off against plaintiff's claim, for that on September 11, 1901, the defendant appeared before the referee in bankruptcy, and proved its demands, evidenced by such promissory notes, against the bankrupt estate of the Oregon Pulp & Paper Co. and claimed the principal sums named in each as due, allowing no credits on account thereof except for interest, thereby intentionally causing the trustee in bankruptcy and the plaintiff to believe that it had no just right to the claim sought to be recovered in this action, and would make no demand therefor; all of which was to its advantage and to plaintiff's injury; and that the trustee, relying thereon, caused the claim set out in the complaint to be listed and appraised, and now to allow a set-off against it would be to plaintiff's injury. For a fourth reply it is alleged that defendant ought not to be authorized to set off any part of the sums due on its notes against plaintiff's claim, for that on July 21, 1901, it commenced a suit in the Circuit Court of the State of Oregon for Multnomah County to collect its two promissory notes and to foreclose its mortgage, but did not give the Oregon Pulp & Paper Co. credit on account of any of the paper received, thereby intentionally leading the trustee in bankruptcy and the plaintiff to believe that no claim would be made to the fund of the bankrupt's estate, causing the trustee to inventory the claim sued on in this action, and plaintiff, relying on such conduct, purchased the chose in action; and that if the plea of set-off be permitted, plaintiff will sustain damage, for which reasons the defendant is, and of right ought to be, estopped from asserting the same against his demand. The cause being at issue was tried without the intervention of a jury, the court stating the conclusions of fact and of law found, and, judgment having been rendered thereon dismissing the action, plaintiff appeals.                             AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Horace Brown Nicholas.*

For respondent there was a brief and an oral argument by *Mr. Milton W. Smith.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

The only question presented for review is whether or not the findings support the judgment. The first three findings are unimportant, and state, in effect, that the defendant, the First National Bank of Portland, Oregon, and the Oregon Pulp & Paper Co. are corporations doing business within this State, and that on August 19, 1901, the latter company was duly adjudged a bankrupt in pursuance of a petition praying therefor filed July 22, 1901. The other findings of fact are, in substance, as follows:

"(4) That the Oregon Pulp & Paper Co. did not sell to the defendant any paper, nor did the latter agree to pay any sum therefor, nor is any sum due from it to plaintiff on account thereof.

(5) That the Oregon Pulp & Paper Co. executed to the defendant the two promissory notes described in the answer, on each of which the interest for nine months had been paid and the sum of $410.91 on account of principal.

(6) That on June 20, 1901, the Oregon Pulp & Paper Co. secured from defendant a loan of $1,500, giving its note therefor, due in 60 days, with 8 per cent interest, securing payment thereof by pledging warehouse receipts of manufactured paper, it being agreed that, if this note was not paid at maturity, the defendant was authorized to sell the paper, discharge the debt for which it was hypothecated, and credit the surplus on the notes aggregating $10,000.

(7) It was further agreed between the maker and the payee of the notes for $7,000 and $3,000, respectively, that in consideration of the loan of $1,500 the Oregon Pulp & Paper Co. would execute to defendant a second mortgage on its property to secure the payment of the $10,000 indebtedness.

(8) That, the note for $1,500 not having been paid at maturity, defendant sold the manufactured paper, realizing therefor $1,955.67, and, after deducting all expenses, applied the sum of $1,544.76 in discharging such note, and credited the remainder of $410.91 on the other notes.

(9) That the paper company, in pursuance of its agreement, executed to defendant a second mortgage, but, a prior incumbrance having exhausted all the property hypothecated, nothing was realized therefrom.

(10) That on June 20, 1901, when the note for $1,500 was given and the second mortgage executed, 'defendant did not know, or have reasonable cause to know, that the said Oregon Pulp & Paper Co. was insolvent.'

(11) That the $1,500 was loaned and the second mortgage taken in good faith, and without intent to obtain a preference over the other creditors of the Oregon Pulp & Paper Co.

(12) That on September 11, 1901, defendant filed in the bankruptcy proceedings instituted against the Oregon Pulp & Paper Co. a claim for $10,000 and interest, as evidenced by its two promissory notes, but no credit was given for the manufactured paper, because at that time no money had been received therefor, for which reason the defendant is not estopped from claiming the proceeds thereafter arising from the sale of such property.

(13) That on July 5, 1901, defendant commenced a suit to foreclose its second mortgage, given to secure the notes amounting to $10,000, and in the complaint no credit was alleged on account of such manufactured paper, because at that time no money had been received therefrom, and that any omission in this respect does not estop the defendant from claiming the proceeds thereafter arising from the sale of the property pledged to it."

The court having declined plaintiff's request to find that the manufactured paper in question was delivered to defendant, or that the claim sued on was assigned to him, he contends that these facts were material to the issue, and that the refusal to make findings thereon constitutes reversible error.

1. When a court tries a cause without a jury, it must make findings of fact covering all the material issues, which, when entered in the journal, are tantamount to special verdicts, and constitute the foundation of the judgment; but, in the absence of a finding on a matter essential to the right of action or defense, such judgment must fail for want of support: *Moody v. Richards,* 29 Or. 282 (45 Pac. 777); *Daly v. Larsen,* 29 Or. 535 (46 Pac. 143); *Breding v. Williams,* 33 Or. 391 (54 Pac. 206); *Wright v. Ramp,* 41 Or. 285 (68 Pac. 731). Though the findings required to be made must be responsive to and cover all the material issues of the case, the court's conclusion on a part of them may be such as to render the others unimportant, and findings thereon superfluous. Thus, in an action of ejectment, the court having found that plaintiff was never the owner nor entitled to the possession of the demanded premises, it was held that no error was committed in failing to find upon the issue of the statute of limitations: *Porter v. Woodward,* 57 Cal.

535; *McCourtney* v. *Fortune,* 57 Cal. 617. In *Quinn* v. *Anderson,* 70 Cal. 454 (11 Pac. 746); which was a suit to enjoin the defendants from obstructing an alleged highway across their premises, and to recover damages resulting from prior interference with travel thereon, the court having found that no public road existed as alleged, and that the locus in quo belonged to the defendants, it was held that the issue raised in respect to the question of damages became immaterial, rendering a finding thereon unnecessary. So, too, in *Diefendorff* v. *Hopkins,* 95 Cal. 343 (28 Pac. 265, 30 Pac. 549), it was ruled that a judgment for the defendant for costs, based on findings in his favor in an action for the conversion of goods, was not rendered erroneous by the absence of an express finding on the issues of value and damages. Reason maintains the rule that when, in an action tried without a jury, the court finds on an issue that ultimately determines and necessarily supports the judgment rendered, other issues in the case become immaterial, and a failure to find thereon does not constitute prejudicial error. If the plaintiff had recovered in the action, a finding that the claim sued on had been transferred to him would probably have been necessary as a basis for the judgment; but, as the defendant prevailed, it is wholly immaterial whether or not the alleged assignment was made to plaintiff.

2. It will be remembered that the court found that the Oregon Pulp & Paper Co. pledged to the defendant warehouse receipts of manufactured paper as security for a loan of $1,500, stipulating that, if default was made in the payment of the note evidencing that sum, the defendant was authorized to sell the paper, discharge the obligation for which it was pledged, and credit the surplus on the $10,000 indebtedness; and that, the note not having been paid at maturity, the defendant, in pursuance of such agreement, sold the paper. The statute of this State makes a warehouse receipt negotiable, a transfer of which is accomplished by indorsement of the party to whose order it is issued: B. & C. Comp. § 4606. The property deposited in a warehouse is represented by the receipt, an assignment of which transfers the property itself: *Anderson* v. *Portland Flouring*

*Mills Co.* 37 Or. 483 (60 Pac. 839, 50 L. R. A. 235, 82 Am. St. Rep. 771) ; *Adamson* v. *Frazier,* 40 Or. 273 (66 Pac. 810, 67 Pac. 300). "A delivery of the receipt," says Mr. Justice LORD in *Solomon* v. *Bushnell,* 11 Or. 277, 279 (3 Pac. 677, 50 Am. Rep. 475), "has the same effect in transferring the title to the property as the delivery of the property.". Default having been made in the payment of the note for the security of which the warehouse receipts were pledged, the title to the paper upon such default immediately vested in the defendant, which was entitled to the possession thereof; and the court, having declared that the property was sold by the defendant, thereby impliedly found that the paper was, in legal effect, delivered to it, and the finding in this respect is sufficient.

3. The findings having disclosed that the warehouse receipts were pledged to defendant June 20, 1901, as security for a loan, and that within four months thereafter the pledgor was adjudged a bankrupt, it is insisted by plaintiff's counsel that the finding to the effect that at the time the loan was made defendant "did not know or have reasonable cause to know" that the Oregon Pulp & Paper Co. was insolvent is not sufficient to uphold the judgment. The act of Congress of July 1, 1898, to establish a uniform system of bankruptcy throughout the United States, contains, among others, the following provision : "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition, or before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person : 30 Stat. U. S. 562, c. 541, § 60*b* (3 U. S. Comp. St. 1901, p. 3445, 1 Fed. Stat. Ann. 525, 674). If this were an action by the trustee in bankruptcy to recover from the defendant the property pledged, or its value, a very different question might be presented; for to defeat the right in such case it would be necessary for the defendant to show that its agent, in taking the security for the loan, within the time mentioned, did not have reasonable cause to believe

that the pledge was intended by the Oregon Pulp & Paper Co. as a preference. In *Falco* v. *Kaupisch Creamery Co.* 42 Or. 422 (70 Pac. 286), it was held that the trustee in bankruptcy was the only person who could sue to recover unpaid stock subscriptions from the stockholders of an Oregon corporation. In *Morgan* v. *Abbott,* 148 Mass. 507 (20 N. E. 165), it was held that in case of fraudulent conveyances which might be avoided by creditors the assignee in insolvency of the grantor, having the right to elect whether to avoid or affirm it, must distinctly manifest his election to avoid it before he could transfer to a third person his right to contest its validity, the court saying: "The same rule should apply in cases of preference, or of a conveyance made with a view to prevent the property from coming to the assignee, which the assignee might avoid." In *McMaster* v. *Campbell,* 41 Mich. 513 (2 N. W. 836), it was held that an assignee in bankruptcy, as the representative of the bankrupt's creditors, is the proper person to take proceedings in their behalf to set aside conveyances made by the bankrupt in fraud of their rights, and if he refuses to perform this duty their remedy is by application to the court which appointed the assignee. In *Allen* v. *Montgomery,* 48 Miss. 101, it was held that property conveyed by a bankrupt in fraud of his creditors became vested by law in his assignee, and he alone had the right to reach and subject it to the payment of debts.

4. In the case at bar the plaintiff does not desire to rescind the pledge, for he concedes that the note intended to be secured thereby should be paid, and seeks only to recover the value of the property in excess of such indebtedness. This is a ratification of the act of the bankrupt, and not in disaffirmance thereof, and, this being so, it is unimportant whether defendant had reasonable cause to believe that the pledge was intended as a preference. The finding that it did not know, or have reasonable cause to know, that the Oregon Pulp & Paper Co. was insolvent seems to have been invited by the language of the reply, but, however this may be, the finding is immaterial, and no prejudicial error can result therefrom. The right to treat the pledge as a preference being vested exclusively in the trustee

in bankruptcy, does not deny plaintiff's authority to maintain this action, which proceeds on the assumption that after the payment of the note secured by the pledge of the warehouse receipts the surplus arising from the sale of the property is an asset of the Oregon Pulp & Paper Co. constituting a chose in action which the trustee, in order to facilitate a speedy settlement of the bankrupt's estate, could sell and assign, but such transfer is an express recognition of the validity of the security, and only seeks to recover such surplus.

5. It is maintained by plaintiff's counsel that defendant, having filed in the bankruptcy proceedings a claim for $10,000, evidenced by the notes for $7,000 and $3,000, respectively, giving no credit for any surplus applicable thereto from the sale of the paper pledged to it after discharging the $1,500 note, thereby waived its security if any existed; and that the statement by the court that because no money had been received from this source September 11, 1901, when defendant's claim was presented to the trustee, the omission to give the credit did not estop it from claiming the proceeds of such sale, is not a finding of fact, but an unwarranted conclusion of law. The cases cited in support of the waiver insisted upon are *Brown* v. *Farmers' Bank,* 6 Bush (Ky.), 198, and *Russell* v. *Owen,* 61 Mo. 185. These decisions were based on a construction of section 21 of the bankruptcy act of March 2, 1867 (14 Stat. U. S. pp. 517, 526, c. 176, § 21; Rev. Stat. U. S. § 5105), which, so far as deemed involved herein is as follows: "No creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action against him; and all proceedings already commenced or unsatisfied judgments already obtained thereon against the bankrupt shall be deemed to be discharged and surrendered thereby." This act was repealed June 7, 1878: 20 Stat. U. S. 99, c. 160. The act of Congress of July 1, 1898, does not contain any provision similar to the section a part of which is quoted, and hence the cases cited can have but little application to the question involved.

"A secured creditor," says Mr. Loveland in his Law of Bankruptcy (2 ed.), § 134, in construing the present bankrupt act, "can resort to one of three remedies: First, he may rely upon his security; second, he may surrender it, and prove the whole debt as unsecured; and, third, he may be admitted only as a creditor for the balance remaining after the deduction of the value of the security." Under the present bankruptcy law a creditor, unless guilty of fraud, or who has secured an undue advantage, may change his proof in form from an unsecured to a secured debt: *In re Fall City Shirt Mfg. Co.* (D. C.) 98 Fed. 592; *In re Wilder* (D. C.), 101 Fed. 104. Such amendments may be permitted after the expiration of the year in which claims may be proved, and the prior receipt of dividends does not preclude the court from permitting such amendment: *Hutchinson* v. *Otis,* 190 U. S. 552 (23 Sup. Ct. 778, 47 L. Ed. 1179); *In re Parkes,* 10 N. B. R. 82 (Fed. Cas. No. 10754). As the defendant could have amended its proof, so as to show that after the payment of the $1,500 note the surplus, if any, arising from the sale of the manufactured paper, was to be applied on the $10,000 indebtedness, we think the court's statement that the defendant was not estopped by its omission in this respect tantamount to a finding that it was not guilty of fraud, and that no error was committed in making it. This conclusion is supported by the bill of exceptions, which shows that the referee in bankruptcy before whom the cause was pending, as defendant's witness, testified that on October 18, 1901, the claim for $10,000, filed in the bankruptcy proceedings September 11, 1901, against the Oregon Pulp & Paper Co., was withdrawn with his approval, and the defendant never participated in the fund nor received any money from the bankrupt's estate.

6. W. C. Alvord, the defendant's second assistant cashier, appearing as its witness, was permitted to testify over plaintiff's objection and exception that warehouse receipts were pledged to his principal to secure a loan of $1,500, under an agreement entered into with the president of the Oregon Pulp & Paper Co. that, if the note evidencing the loan was not paid at maturity, the surplus arising from the sale of the property pledged should

be credited on the $10,000 indebtedness, and that in pursuance of such agreement $410.91 was so applied. Based on this testimony, the court having made a finding in conformity therewith, it is urged by plaintiff's counsel that the evidence was incompetent to prove the agreement in respect to the application of the surplus, and that an error was committed in admitting the testimony and in making such finding. In *Looney* v. *Rankin,* 15 Or. 617 (16 Pac. 660), Mr. Justice THAYER, recognizing the existence of the rule that evidence of a contemporaneous parol agreement was inadmissible to vary the terms of a written contract, says: "The rule here referred to, so far as it extends, is inflexible. But it has been held not to extend to a collateral parol agreement or independent facts which do not interfere with the terms of the written contract, though it may relate to the same subject-matter, and have occurred contemporaneously with or preliminary to the main contract in writing." The legal principle thus announced is amply supported by the decisions of the courts of last resort, and, though the loan of $1,500 was evidenced by a written agreement, the pledge of warehouse receipts as security therefor was collateral thereto, and, in our opinion, parol evidence was properly admissible, to prove not only the payment of the note, but after its discharge the application of the surplus arising from the sale of the paper on the indebtedness of $10,000, in case default was made in discharging the note for the payment of which the pledge was given, and that no error was committed in making a finding to that effect.

7. The findings of fact were filed June 2, 1903, and judgment given thereon the next day, and it is argued by plaintiff's counsel that the decision was prematurely entered. No motion for a new trial was pending at the time the judgment was rendered, and, one day having intervened after the findings were filed, no error was committed in entering the judgment, which is affirmed.    AFFIRMED.