Argued July 14, decided October 6, 1908, rehearing denied January 12, 1909.

## * KING *v.* MILLER.

[97 Pac. 542.]

JUDGMENT—ASSIGNMENT—OPERATION.

1. An assignment of a judgment, unless otherwise intended, carries with it the claim on which the judgment was based.

SAME—RIGHTS OF ASSIGNEE.

2. An assignee of a judgment stands in no better position than his assignor, and the judgment may be reversed after the assignment.

SAME.

3. Where a judgment, assigned by an assignment without reservation, and which carries the cause of action, is reversed, the assignee may sue to recover the sum paid for the assignment, on the ground of failure of consideration, or he may continue the suit on the cause of action, since under the statute (Section 38, B. & C. Comp.) an action does not abate by the transfer of any interest therein, if the cause of action survive.

ASSIGNMENT—CHOSES IN ACTION—PENDENTE LITE—RIGHTS OF ASSIGNEE.

4. An assignee of a cause of action *pendente lite* may continue the action in the name of his assignor, and he may control the action and prevent the assignor from dismissing it against his objection.

SAME.

5. The courts will protect an assignee of a chose in action *pendente lite* against the act of the assignor and against the act of the debtor after notice of the assignment.

SAME—PLEADING.

6. Though a statute authorizes the substitution of an assignee of a chose in action *pendente lite*, the assignee may, if he desires, continue the action in the name of the original party without filing a supplemental complaint.

SAME.

7. An assignee of a chose in action may maintain an action thereon in his own name, though he pays no consideration therefor.

SAME.

8. An assignee of a chose in action may maintain an action thereon in his own name without disclosing in his complaint his representative capacity, though he is a mere agent, with no beneficial interest.

SAME.

9. The doctrine that, where plaintiff sues in a representative capacity as executor, assignee for benefit of creditors, trustee of an express trust, and the like, he must disclose for whom he is trustee, does not apply to an action by the assignee of a chose in action who is the owner and holder of the legal title.

SAME.

10. In an action by an assignee of a judgment obtained by a bank against an attorney who had collected a judgment assigned to the bank for collection, evidence that the assignment to the bank was made by the judgment creditor, as security for the payment of an indebtedness to a third person, was competent to show the consideration for the assignment, and that such an interest passed as deprived the judgment creditor of the right to revoke the assignment.

* Mr. Commissioner King, being respondent, took no part in this decision.

BANKS AND BANKING — NATIONAL BANKS — AUTHORITY — ASSIGNEE OF CLAIM FOR COLLECTION.

11. A national bank may take an absolute assignment of a claim for collection, and agree to pay the proceeds or part thereof to another, and by such transfer the legal title passes to the bank, and its agent to collect the money thereon cannot refuse to pay it to the bank, on the ground that it had no legal right to own such claim.

EVIDENCE—PAROL EVIDENCE — VARYING TERMS OF WRITTEN INSTRUMENTS.

12. In an action by an assignee of a judgment, obtained by a bank against an attorney who had collected a judgment assigned to the bank for collection, to recover on the original cause of action after the reversal of the judgment, parol evidence that the assignment to the bank was in part for the benefit of a third person was admissible, though the bank in writing agreed to hold the proceeds subject to the order of the judgment creditor; the attorney not being a party to the contract made by the bank, and the proof not varying the written agreement as between the parties thereto.

JUDGMENT—ASSIGNMENT—OPERATION.

13. A judgment creditor assigned the judgment to a bank for collection and to hold the proceeds subject to the order of the judgment creditor. The assignment was intended as security for the payment of a debt due from the judgment creditor to a third person. The bank instructed defendant to collect the judgment, deduct his fees, and remit the balance. The bank sued defendant for the money collected by him and paid to a stranger, who held an assignment of the debt on which the judgment was based. *Held*, that a revocation of the assignment after the bank had begun an action against defendant for the money collected by him, or an attempted ratification or approval by the assignor of the payment of such money, was no defense.

FRAUDULENT CONVEYANCES—VALIDITY AS BETWEEN THE PARTIES.

14. An assignment of a judgment, though made for the purpose of defrauding the creditors of the assignor, is valid as between the parties, and it is voidable only at the instance of persons attempted to be defrauded in a proceeding brought for that purpose.

JUDGMENTS—ASSIGNMENTS—RIGHTS TRANSFERRED.

15. Proof that debtor gave to a creditor an order on a third person directing him to pay over to the creditor "all the moneys which you are now owing me" does not establish an assignment of a judgment recovered two years later by the debtor against the third person, in the absence of proof that the order was accepted by the third person, or that the "moneys" therein referred to was the same debt on which the judgment was based.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

On April 11, 1903, Henry Helmick recovered judgment in the circuit court for Malheur County, against O. W. Porter, for $2,930.22, and costs. Defendant Miller was his attorney. On the 27th of the month Helmick, being indebted to one J. A. Lauer, assigned the judgment to the First National Bank of Payette, Idaho, for collection,

the bank to pay the amount due Lauer from the money so collected, and to hold the balance subject to the order of Helmick. At the time of the assignment the bank gave to Helmick a writing, stating that it had received the judgment for collection, "the proceeds of which, when collected, shall be subject to your order." Immediately after the assignment the bank notified Miller thereof, and instructed him to collect the amount due on the judgment, deduct his fees, and remit the balance to it, which he agreed to do. On June 29th Miller made the collection, acknowledging satisfaction of the judgment on the record by signing the name of Helmick and of the bank, by himself as attorney, deducted $200 for his fee, but, in place of remitting the balance to the bank, paid it over to the Moss Mercantile Company, who claimed to have an assignment of the debt, upon which the judgment was based, prior in time to the bank. On July 13th Helmick and Lauer agreed in writing with the bank to indemnify it against the costs and expenses of the litigation, and on the 27th of the month the bank commenced an action against the defendant to recover the money collected by him, alleging in its complaint that the defendant was its agent and attorney, duly authorized by it to collect and receive the money, and as such agent collected and received on the judgment the sum of $2,930.22, of which amount he was duly authorized by plaintiff to retain $200 for his fees, and that he had failed and neglected to pay the balance over to it. On September 25th Helmick undertook to revoke in writing the assignment of the judgment to the bank, and to ratify and approve the action of defendant in paying the money collected thereon to the Moss Mercantile Company. Shortly thereafter the mercantile company commenced a suit in equity against the bank, to enjoin it from prosecuting its action at law against the defendant, but this suit was dismissed. *Moss Mercantile Co.* v. *First National Bank,* 47 Or. 361 (82 Pac. 8: 2 L. R. A. (N. S.), 657).

Defendant thereupon answered in the law action, denying that he collected the judgment, as agent of the bank, admitting the assignment of such judgment to the bank, but denying that it was for valuable consideration, and affirmatively alleging (1) that he was the agent of Helmick in the collection of the money, and collected the same at his request; (2) that prior to the assignment of the judgment to the bank, Helmick had assigned and transferred to the Moss Mercantile Company the debt upon which the judgment was based, of which fact the bank had notice, and that Helmick instructed him to collect the money on such judgment and pay it to the mercantile company; (3) that the assignment to the bank was for collection only and without consideration; (4) that it was made for the purpose of defrauding the mercantile company and that such company was the owner, and entitled to the proceeds of the judgment, and defendant had paid the money to it, which act was ratified and approved by Helmick; (5) the revocation by Helmick of the assignment of the judgment to the bank.

A reply put in issue the averments of the answer, and a trial was had on March 13, 1906, which resulted in a verdict and judgment in favor of plaintiff for the amount prayed for in the complaint. On March 29th the bank at the request of Helmick and Lauer, assigned the judgment to W. R. King, one of its attorneys, with the understanding and agreement that from the amount collected thereon, he would pay Lauer $1,943, the bank $100 to cover costs and expenses incurred by it in the litigation, his own fees and the costs of collection, and the balance to one Graham, for the benefit of Helmick. Defendant thereafter appealed from the judgment, and when the cause came on for hearing in this court, King appeared, and moved to be substituted as party plaintiff in lieu of the bank, setting out in his petition therefor the assignment of the judgment to him. Defendant consented to this application, and an order was thereupon

made substituting King as plaintiff, and from that time on the cause proceeded under his name. On December 11th the judgment was reversed, and a new trial ordered. A cost bill was subsequently filed by defendant under the substituted title, and a mandate under such title was issued and remitted to the court below. Before a retrial of the cause, however, the control of the bank had passed into the hands of the members of the Moss Mercantile Company, and on April 24, 1907, it executed a release to defendant of the cause of action, and by resolution directed its attorney to dismiss the action then pending. On April 25th, in pursuance of this resolution, the bank appeared in court by its counsel, and moved to dismiss the action, but such motion was overruled. Defendant thereupon filed a similar motion for the same reason, to which the bank assented, but this was likewise overruled. An order was afterwards made by the court below substituting Mr. King as plaintiff. Upon the trial judgment was rendered in his favor, from which defendant appeals.                              AFFIRMED.

For appellant there was a brief over the names of *Mr. William Miller* and *Messrs. Richards & Haga,* with an oral argument by *Mr. Oliver O. Haga.*

For respondent there was a brief over the names of *Mr. William H. Brooke, Mr. Francis M. Saxton, Mr. Isaac D. Hunt* and *Mr. Charles E. S. Wood,* with an oral argument by *Mr. Wood.*

Opinion by MR. CHIEF JUSTICE BEAN.

The record contains numerous assignments of error, but they may, we think, be grouped under the following heads: (1) The action of the court in overruling the motions of the bank and of defendant to dismiss the action, and in substituting Mr. King as plaintiff, allowing the action to proceed in his name, and admitting proof of the assignment of the judgment by the bank to him; (2) in admitting evidence that the assignment by

Helmick to the bank of the judgment in question, and from the bank to King, was intended as security for the payment of a debt owing from Helmick to Lauer; (3) in refusing to permit the defendant to show that after the assignment to the bank, and after defendant had collected the money due thereon, and the bank had commenced an action against him to recover the same, Helmick and the mercantile company had a settlement and adjustment of their affairs, in which Helmick ratified and approved the payment of the money collected by defendant on the judgment to such company; (4) in refusing to allow defendant to show that at the time of the assignment of the judgment by Helmick to the bank, Helmick was indebted to the mercantile company, of which fact the bank had knowledge, and that the assignment was for the purpose of defrauding such company; (5) in refusing to admit an order of Helmick on Porter, the judgment debtor, dated some two years prior to the recovery of such judgment, to pay to the mercantile company any moneys due him, and in refusing to admit in evidence the resolution of the board of directors of the bank, passed after the judgment had been assigned to Mr. King, releasing or attempting to release defendant from any further liability.

1. In support of the first position it is contended that when the judgment which the bank had recovered against defendant was reversed, and a new trial ordered, the case stood in the same condition as if no assignment of the judgment had been made to Mr. King, and that the bank had control over the action and right to dismiss it, regardless of such assignment. The claim is that under the law an assignee of a judgment, which is subsequently vacated or reversed, takes no interest whatever under the assignment, and that his remedy is exclusively against the assignor to recover the amount paid therefor. But we understand the law to be that an assignment of a judgment, unless otherwise intended,

carries with it the claim upon which the judgment was based. It is so stated by Mr. Black (2 Black, Judgments, § 948), and Mr. Freeman (2 Freeman, Judgments, § 431), and in *Pattison* v. *Hull,* 9 Cow. (N. Y.), 747, it was held that the assignment of a judgment for a debt carries a debt, and if the latter be secured by a mortgage it carries the mortgage also, Mr. Justice COWAN saying: "The assignment of a judgment necessarily carries the debt, nor is it possible to separate them. The judgment would be barren, nor can we conceive of its existence without the debt. I must therefore hold the debt to be directly assigned in this case, and all the effects must follow which the law attaches to an assignment of that character. One of these is that an interest in the mortgaged premises passes as an incident to the debt which is the principal." To the same effect: 23 Cyc. 1417; 17 Am. & Eng. Enc. Law (2 ed.), 882; *Brown* v. *Scott,* 25 Cal. 189; *Heisen* v. *Smith,* 138 Cal. 216 (71 Pac. 180: 94 Am. St. Rep. 39; *Bolen* v. *Crosby,* 49 N. Y., 183.

2. It is true the assignee of a judgment stands in no better position than his assignor, and the judgment thereafter may be vacated, reversed, or set aside. In such case the assignee has a remedy against the assignor to recover the amount paid for the judgment, on the ground of a failure of consideration. 23 Cyc. 1424; *Weber* v. *Tschetter,* 1 S. D. 205 (46 N. W. 201). But we do not understand that he is compelled in all cases to pursue such remedy. If, notwithstanding, the vacation or reversal of the judgment, the original action is still pending and undetermined, he may, if he so elect, continue the same to final decision, and thus enforce the claim or demand upon which the judgment is based.

3. The case of *Vila* v. *Weston,* 33 Conn. 42, principally relied upon by defendant, was an action on a promissory note and a common count in general assumpsit. The judgment was by default. The plaintiff made an assign-

ment to one Goodman, and the judgment was subsequently reversed, and the cause again entered on the trial docket. The plaintiff thereafter sought to continue the action to final judgment, and, in view of the rule apparently in force in that State that an action abates by the transfer of the cause of action *pendente lite,* it became important to ascertain what was intended to pass by the assignment; if the debt, the action abated, and could not be continued by the plaintiff after reversal, but if the judgment only, he could do so. The court held that from the language of the assignment, in the light of the surrounding circumstances, it was not the intention of the parties to pass title to the cause of action, but to the judgment only, and that under the statutes, when the judgment was reversed, the parties were restored to their original status, and the assignor could continue the action in his own name to final determination, notwithstanding the assignment; the remedy of the assignee being to recover the money paid for the judgment. But the court expressly says that the question whether the assignee would have had a right in equity to the new judgment, if he had so elected was not decided. The same effect was apparently given to the vacation of a judgment by an appeal in *Bennett* v. *Lathrop,* 71 Conn., 613 (42 Atl. 634: 71 Am. St. Rep. 222). These cases are therefore authority only for the position that, where it is expressly intended by the parties to assign a judgment only, the assignee takes nothing if the judgment is subsequently reversed or vacated, and this may be conceded. But where the assignment is of the judgment without any reservation whatever, it, in our opinion, necessarily carries the cause of action upon which it is based; and where, as under our statute (Section 38, B. & C. Comp.), an action does not abate by the transfer of any interest therein if the cause of action survive, the assignee is in the same position after reversal as any other purchaser *pendente lite,* and entitled to the same rights and remedies.

4. Next it is claimed that the assignee of a cause of action in a pending suit cannot be substituted in place of his assignor, and therefore Mr. King had no right to control the present litigation. We do not regard this question, however, of great importance in this case. The record discloses that the substitution of Mr. King for the bank was made by the consent of the defendant, and it would seem, therefore, that it is too late for him to make any objection thereto. But, however this may be, and whatever the rule may be in reference to the right of the assignee of a cause of action *pendente lite* to be substituted in place of the assignor, he certainly has a right to have the action continued in the name of his assignor for his benefit. 20 Enc. Pl. & Pr., 1035; *Dundee Mortgage & Trust Investment Co.* v. *Hughes* [C. C.], 89 Fed. 182; *Elliot* v. *Teal,* Fed. Cas. No. 4389.

5. And the courts will protect him against the act of the assignor (*Walker* v. *Felt,* 54 Cal. 386), and of the debtor after he has notice of the assignment (*Mason* v. *Beach,* 55 Wis. 607: 13 N. W. 884).

6. And, therefore, whether Mr. King was properly substituted as plaintiff is immaterial, because in any event he had a right to control the action, and the bank could not, after the assignment, dismiss it against his objection. Some contention is made that a supplementary complaint should have been filed setting up the assignment. But since the substitution was made by the consent of defendant, and without objection on his part, it is doubtful whether he can raise the question suggested, but we find the rule announced in states where the statute authorizes the substitution of an assignee that the matter is optional, and the action may, if the assignee desires, be continued in the name of the original party and no supplemental complaint is necessary. *Lowell* v. *Parkinson,* 4 Utah, 64 (6 Pac. 58) ; Hawes, Parties, § 34; 20 Enc. Pl. & Pr., § 1033.

7. It is next claimed the court below erred in admitting evidence that the assignment to the bank by Helmick

of the judgment recovered by him against Porter and the assignment from the bank to Mr. King, was intended as security for the payment of a debt owing from Helmick to Lauer, because the terms of the contract between Helmick and the bank are in writing. The complaint does not aver that the assignment was made as security for the payment of Helmick's debts, and that a national bank cannot act as a trustee. The rule is settled in this jurisdiction that an assignee of a chose in action may maintain an action thereon in his own name, although he pays no consideration therefor. *Gregoire* v. *Rourke,* 28 Or. 275 (42 Pac. 996).

8. By the assignment he becomes the real party in interest because he has a valid transfer as against the assignor, and holds the legal title to the demand. This entitles him to sue thereon in his own name. Hawes, Parties, § 34; *Sheridan* v. *Mayor,* 68 N. Y. 30; *Allen* v. *Brown,* 44 N. Y. 228; *Curtin* v. *Kowalsky,* 145 Cal. 431 (78 Pac. 962). And in bringing such suit he is not compelled or required to disclose his representative capacity in his complaint. *Langdon* v. *Thompson,* 25 Minn. 509. And this is so, although he may be a mere agent or trustee with no beneficial interest (*Cassidy* v. *Woodward,* 77 Iowa, 354: 42 N. W. 319), or has agreed to hold the proceeds as trustee of the assignor or other parties (*Anderson* v. *Reardon,* 46 Minn. 185, 48 N. W. 777).

9. It may be true that, where the plaintiff sues in a representative capacity as executor, assignee for benefit of the creditors, trustee of an express trust, and the like, he must disclose for whom he is trustee. *School District No. 42, Garfield County,* v. *Peninsular Trust Co.,* 13 Okl. 479 (75 Pac. 281).

10. But this doctrine does not apply to an action brought by the assignee of a chose in action who is the owner and holder of the legal title. It is sufficient for the defendant if payment by him to the plaintiff will be a protection against a demand for the same debt

by other parties, and therefore we think proof that the assignment was made as security for the payment of an indebtedness to Lauer was competent under the pleadings. It tended to show the consideration for the transfer and such an interest in the assignee that Helmick could not thereafter revoke the assignment.

11. It is said that a national bank cannot act as a trustee, but we do not understand how this question becomes important here. There is no rule of law preventing a national bank from taking an absolute assignment of a claim for collection and agreeing to pay the proceeds or part thereof to another. By such a transfer the legal title passes to the bank, and one acting as its agent or representative and collecting the money thereon, cannot refuse to pay it to his principal on the ground that it had no legal right to own such claim. In this case after the judgment had been assigned to the bank it directed the defendant to collect the amount due thereon for it, and he agreed to do so. When he made the collection it was his duty to pay it over to the bank, unless in fact the money belonged to another. And he cannot escape liability by setting up the defense that the bank had no right, in the first instance, to take the assignment.

12. Next, it is claimed that parol proof that the assignment to the bank was in part for the benefit of Mr. Lauer was varying or contradicting the terms of a writing. At the time the assignment was made the bank signed and delivered to Helmick a letter, stating that the judgment had been entered for collection, the "proceeds of which, when collected, shall be subject to your order," and it is insisted that the evidence referred to is contradictory of this writing. But the defendant was not a party to such contract. There is no attempt in this case to vary or contradict the writing as between the parties who made it. It was admissible, tending to show the terms of the agreement under which the

assignment was made, but was not conclusive on the parties to this litigation. *Lewis* v. *First National Bank,* 46 Or. 182 (78 Pac. 990) ; *Peterson* v. *Creason,* 47 Or. 69 (81 Pac. 574).

13. It is next claimed that some time after the assignment of the judgment by Helmick to the bank, and after the money had been collected on such judgment by defendant and paid to the Moss Mercantile Company, and the bank had brought an action to recover the same, Helmick revoked the assignment, and in a settlement between himself and the Moss Mercantile Company ratified and approved the payment of the money collected by defendant on the judgment to such company. But as the assignment of the judgment by Helmick to the bank was intended as security for the payment of a debt due from him to Lauer, a revocation of such assignment after the bank had begun an action against defendant to recover the money collected by him on the judgment, or an attempted ratification or approval of the payment of such money to the mercantile company, is no defense for defendant in the present case. *Walker* v. *Felt,* 54 Cal. 386; *Frink* v. *Roe,* 70 Cal. 296 (11 Pac. 820).

14. It is said the court erred in refusing to admit testimony tending to show that the assignment of the judgment by Helmick to the bank was made for the purpose of· defrauding creditors, and especially the Moss Mercantile Company. But this is a matter with which defendant has no concern. His duty was to pay the money collected by him on the judgment to the rightful owner. The assignment was valid, and passes the legal title as between the parties, even if made with intent to defraud creditors. It was voidable only at the instance of the person or persons attempted to be defrauded, in a proper proceeding brought for the purpose. *Pitkin* v. *Burnham,* 62 Neb. 385 (87 N. W. 160: 55 L. R. A. 280: 89 Am. St. Rep. 763). As·said by this court in *Moss Mercantile Co.* v. *Bank,* 47 Or. 361 (82 Pac. 8:

2 L. R. A. (N. S.), 657), the point in controversy is whether the money collected by Miller belonged to the bank or the mercantile company. If it was the property of the bank, Miller is liable to it, but if it belonged to the Moss Mercantile Company, and he paid it over on demand, such payment will be a complete defense, and so the only question is whether the money collected on the judgment by Miller in fact belonged to the bank, the assignee and owner of the judgment, or whether it belonged to and was owned by the Moss Mercantile Company. Unless it was owned by the latter, the motive which prompted Helmick to make the assignment to the bank was of no consequence to the defendant, and he cannot justify the payment of the money to some creditor of Helmick on the ground that the assignment was made for the purpose of defrauding such creditor. He is not the representative of, nor does he stand in place of, the creditor. His duty, after he collected the money, was to pay it to the rightful owner, and not assume to determine who was in equity and good conscience entitled to it.

15. It is claimed that the Moss Mercantile Company was in fact the owner of the money, because some two years or more prior to the recovery of the judgment by Helmick against Porter, Helmick gave to such company an order on Porter authorizing and directing him "to pay over to Moss Mercantile Company, Limited, all moneys which you are now owing me." There is no proof that this order was ever accepted by Porter, or that the "moneys" therein referred to was the debt or obligation upon which the judgment subsequently recovered by Helmick against Porter was based. Under such circumstances the order could not have operated as an assignment of a judgment recovered some two years after its date. It is limited on its face to the moneys "now owing," and does not purport to assign or transfer or in any way affect subsequent indebtedness.

Judgment affirmed.                    AFFIRMED.