Argued April 16, reversed April 30, rehearing denied May 21, 1918.

## GRESS v. WESSINGER.

(172 Pac. 495.)

**Mortgages—Assignment of Land Contract.**

1. An assignment of a contract for the sale of land may be shown by parol evidence to be a mortgage.

**Pledges—Parol Evidence.**

2. An assignment of a land contract as collateral to a note, and the note, may be shown by parol to be merely security for the performance of a contract.

88 Or.—40

**Bills and Notes—Defenses—Pleading.**

3. Where the condition upon which a promissory note was to become operative never happened, such fact need not be specially pleaded, but is a failure of consideration provable under the general issue.

**Pledges—Evidence.**

4. Evidence *held* to show that an assignment of a contract for sale of land securing a note, and the note, were merely executed to guarantee return of property.

**Appeal and Error—Equity Cases—Findings of Fact—Review.**

5. Where it cannot be determined in equity case whether decree for defendant was based on assumption that plaintiff's evidence was incompetent, or that testimony preponderated in favor of defendant, that the trial judge saw the witnesses will not be given weight in considering the evidence.

> [As to the law of collateral securities, see note in 32 **Am. St. Rep.** 711.]

From Multnomah: William N. Gatens, Judge.

Department 2.

This is a suit by George Gress and Minnie Brakebush against Paul Wessinger and Henry Wagner to redeem a contract for the sale of land made by Charles E. Halstead, the owner of the premises, to Gress and assigned by him to the defendants. The complaint states in effect that at all the times mentioned therein the plaintiffs were and are the holders of a contract to purchase four and a half acres of land in Multnomah County, Oregon, particularly describing the premises; that though Gress is the only obligee named in such contract, the plaintiff Minnie Brakebush was at all times the owner of an undivided one half of the land; that on February 10, 1912, Gress executed to the defendants his promissory note for $800 and at the same time also assigned to them the contract of purchase as a pledge for his redelivery to them of the furniture then used in the Enterprise Hotel at Portland, Oregon, upon the surrender of which household goods the defendants were to return to him the promis-

sory note and reassign to him the contract of pur-
chase; that Gress has delivered all such furniture to
the defendants, who are in the possession thereof, but
upon a demand therefor they refuse to comply with
the terms of their agreement to return the note and
reassign the contract; that the defendants knew that
Minnie Brakebush was the owner of a moiety of the
land at the time the contract was assigned to them;
that the plaintiffs have kept and performed all the
covenants and agreements respecting the purchase of
the land; and that the assignment of the contract hav-
ing been recorded in that county casts a cloud upon the
plaintiffs' title to the real property.

The answer denies the material averments of the
initiatory pleading and for a cross-complaint substan-
tially alleges that the promissory note for $800 was
executed to the defendants by Gress to evidence a loan
of that sum of money by them to him, and in order to
secure the payment thereof he assigned to them the
contract of sale, which memorandum was duly re-
corded; that no part of that sum has been paid; that
$100 is a reasonable sum as attorney's fees as provided
for in the note in case suit were instituted thereon; and
that the defendants are entitled to a foreclosure of the
security thus given.

The reply denies the averments of new matter in the
answer, and the case having been tried the court, with-
out making any findings of fact, gave a decree for the
defendants as prayed for in the cross-complaint, and
the plaintiffs appeal.

REVERSED. DECREE ENTERED.

For appellants there was a brief over the names of
*Messrs. Crawford & Crawford* and *Mr. W. C. Camp-
bell,* with oral arguments by *Mr. Andrew M. Crawford*
and *Mr. Campbell.*

For respondents there was a brief over the names of *Mr. M. M. Matthiessen* and *Messrs. Wood, Montague & Hunt,* with an oral argument by *Mr. Matthiessen.*

MOORE, J.—The evidence shows that on September 14, 1910, the plaintiff George Gress entered into a written contract with Charles H. Halstead to purchase four and a half acres of land in Multnomah County, Oregon, for $3,150, on account of which $200 was then advanced and the remainder was to be paid in installments of $50 and interest thereon on the 15th of each subsequent month until the entire consideration was paid, when a deed was to have been executed to him by the vendor. The defendants are the executors of the last will and testament of Henry Weinhard, who at the time of his death was the owner at Portland, Oregon, of a large brewery, the operation of which was thereafter continued by them. The firm of Mills & Splawn was, on February 9, 1912, and for some time prior thereto had been, conducting in that city and were the lessees of the Enterprise Hotel, consisting of about fifty furnished rooms, a restaurant, a poolroom, and a saloon. These partners desiring to assign their interest in the hotel, engaged James Gentemann a real estate dealer, to secure a purchaser for them. This broker, learning that the plaintiff George Gress and his father-in-law, Fred Brakebush, desired to lease the hotel, went with them to the brewery where they met Lewis H. Hamig, the defendants' agent, with whom a bargain was concluded, whereby Gress & Brakebush stipulated to pay $2,800, the remainder due the city for an assignment of the unexpired liquor license, $333.35 for money advanced by Mills & Splawn on account of such license for the then current half year, which latter sum was evidenced by a promissory note executed by

Gress & Brakebush to the defendants, and the further sum of $800, represented by a promissory note given to them by Gress, payable on demand with interest from date until paid at 6 per cent per annum. Thereupon a writing was subscribed by the defendants who were designated therein as the parties of the first part and by Gress as the party of the second part, the material parts of which memorandum reads:

"Whereas, under date of February 10th, 1912, the parties of the first part have advanced to the party of the second part the sum of eight hundred dollars ($800) as witnesseth that certain promissory note of which the following is substantially a copy: (setting forth a duplicate thereof) express reference being made to said note for more certainty; and,

"Whereas, the party of the second part has under date of February 10th, 1912, made an assignment of a certain contract to sell real property, which contract was made and entered into by and between Charles E. Halstead, the first party therein, and George Gress, the second party therein, under date of September 14, 1910, express reference being made to said contract for sale of real property for more certainty;

"Now, therefore, in consideration of the sum of one dollar moving from the parties of the first part to the party of the second part, and in consideration of a like amount moving from the party of the second part to the parties of the first part, receipt whereof is hereby acknowledged, it is hereby agreed by and between the parties hereto that should the party of the second part well and truly pay unto the parties of the first part the sum of eight hundred dollars ($800) together with interest at the rate of six per cent per annum from February 10, 1912, on or before six (6) months from the date of this agreement, then in that event the parties of the first part will reassign to the party of the second part the above-mentioned contract for sale of real property."

In order to evidence the payment of $2,800, when the semi-annual installments thereof severally matured to the City of Portland for the unexpired liquor license which had been issued to Mills & Splawn and by them assigned with the consent of the municipality to Gress & Brakebush, and to guarantee the payment of $2,000, the rent subsequently to accrue for the use of the hotel by the latter, a promissory note for $5,000 was given to the defendants by Caroline Janecke and secured by her mortgage of a farm in the Willamette Valley. . The defendants were compelled to pay $4.55 more than the $1,133.35, evidenced by the promissory note executed to them by Gress and by him and Brakebush in paying Mills & Splawn and in liquidating the indebtedness which they had incurred in conducting the Enterprise Hotel, the possession of which was surrendered to Gress & Brakebush.

1, 2. The promissory note for $800, executed by Gress, the assignment of the land contract, and the defeasance though evidenced by separate writings were executed at the same time, and should be construed together and when so interpreted the transfer of the contract to purchase should be regarded as constituting an equitable mortgage: 1 Jones, Mort. (7 ed.), § 172; *Lovejoy* v. *Chapman,* 23 Or. 571 (32 Pac. 687).

"Parol evidence," says a text-writer, "is admissible to show the true character of a mortgage, and for what purpose and what consideration it was given. Although it is for a definite sum, and secures the payment of notes for definite amounts, it may be shown that it is simply one of indemnity, or for future advances": 1 Jones, Mort. (7 ed.), § 384.

The consideration expressed in an equitable mortgage of land is no more sacred than a statement thereof in a deed of real property, in which latter con-

veyance the true inducement to the contract may, upon proper averment, become the subject of judicial inquiry and be determined by parol evidence: *Velten* v. *Carmack,* 23 Or. 282 (31 Pac. 658, 20 L. R. A. 101). The assignment of the land contract was collateral to the execution of the promissory note for $800, thereby rendering such pledge subject to parol evidence to explain the condition upon which the contract was transferred: *Lewis* v. *First Nat. Bank,* 46 Or. 182 (78 Pac. 990). In *La Grande Nat. Bank* v. *Blum,* 26 Or. 49 (37 Pac. 48), it was ruled that as between the original parties to a promissory note the maker might show by extrinsic evidence that the instrument was executed as security for the performance of a contract, the terms of which had been complied with, since such evidence did not change the stipulations of the writing, but disclosed a failure of consideration. To the same effect see, also, the notes to the case of *Beach* v. *Nevins,* 162 Fed. 129 (18 L. R. A. (N. S.) 288, 89 C. C. A. 129).

3. If the plaintiffs' theory of this case is correct, then the condition upon which the promissory note for $800 was to become operative, never happened, and this being so, that fact is not like payment or other discharge of the obligation which must be specially plead, but is a failure of consideration which may be established under the general issue: 4 Cyc. 355; *Dollar Savings & Trust Co.* v. *Crawford,* 69 W. Va. 109 (70 S. E. 1089, 33 L. R. A. (N. S.) 587); *Craig* v. *State of Missouri,* 4 Pet. (U. S.) 410 (7 L. Ed. 903).

Based upon these rules the testimony will be examined respecting the averments of the complaint, that the promissory note for $800 was given and the land contract assigned, to guarantee the return to the defendants of the furniture in the Enterprise Hotel. Mr. Gress, referring to Mr. Brakebush, to the real

estate agent and to Weinhard's Brewery, testified as follows:

"Me and my father-in-law intended to rent the Edmondson Hotel. We couldn't raise the money, so Mr. Gentemann, he says, 'I know a better place,' he says, 'you will make better money and it won't cost, won't be no expense' so we looked at it [The Enterprise Hotel] and seen Mills & Splawn, and asked the price. We had to buy the license, and buy the furniture, and he [the broker] says, 'The brewery owns the whole thing.'"

This witness stated that Lewis H. Hamig, the defendants' credit agent, demanded that the $800 note should be given as security for the return of the furniture in the hotel, and that upon the return thereof he would reassign the land contract and note; that Mr. Hamig in consummating the bargain with the witness and Mr. Brakebush never said a word about their payment of the debts due from Mills & Splawn to their creditors; that the value of the furniture in the hotel was about $100; and that the four and a half acres of land was worth about $5,000, and the entire consideration therefor, $3,150, had all been paid but about $300.

Mrs. Minnie Brakebush testified that when the $800 note was submitted for execution Mr. Hamig said he wanted security so we couldn't dispose of the furniture in any shape or form and Mr. Gress gave the security.

Fred Brakebush testified that in negotiating for the occupancy and use of the Enterprise Hotel, Mr. Hamig stated that the furniture in that building was owned by the Weinhard Brewery; that Mills & Splawn never represented they owned any of it; that no bill of sale therefor was ever obtained by Mr. Gress or himself; and that they did not purchase any furniture.

James Gentemann, the real estate agent, testified that in Mr. Hamig's presence, objection was made to the furniture, whereupon the witness stated to Mr. Gress:

"You just give the security. It is just to show you are not going to run away with it in case he left and couldn't run the saloon any more. That is what he gave the security for"; that Mr. Gress remarked, "The furniture is worth not so much. I told him that makes no difference, you just give security and leave it the way it is"; "Q. Did Mr. Hamig tell you that the furniture was to be held as security? A. Yes."

The witness also stated that the furniture was worth about $100 and was no part of the sale between Hamig and Gress other than security. In rebuttal Mr. Gentemann testified that Hamig told him Gress would have to put up some security for the furniture.

"Q. Did Mr. Hamig tell you to tell George Gress that any security he would put up would be returned to him on his leaving the hotel, if he left the furniture there."

"A. No, he didn't say that to me. At the same time it was the understanding."

"Q. That was your understanding?"

"A. Yes. * * " The plaintiffs' counsel referring to Mr. Gress, inquired: "He wasn't buying the furniture?" This witness replied: "No." On cross-examination this witness was asked, "Did you understand the hotel and furniture and all those things were for sale?" He answered: "Yes."

"Q. Did you understand the furniture was for sale?"

"A. Yes."

"Q. Did you understand it was to be sold?"

"A. Yes."

Lewis H. Hamig, the defendant's credit agent, testified that Mr. Splawn of the firm of Mills & Splawn, brought to him Mr. Gentemann, who stated that Gress

& Brakebush wanted to secure the Enterprise Hotel; that a bargain was concluded with the latter firm whereby they stipulated to give $2,800 for the unexpired portion of the liquor license which had to be paid to the city, $333.35 which Mills & Splawn had advanced on account of the license to June 30, 1912, and the further sum of $800, amounting to $3,933.35. The defendants' counsel referring to such total consideration inquired:

"That is composed of what?" The witness answered: "The liquor license $2800, furniture and fixtures in the saloon, rooming-house and restaurant, excepting the bar outfit and pump outfit which belonged to the Weinhard Brewery, and were not included in the bill of sale."

Mr. Hamig, referring to the clause in the assignment of the land contract which provided that if Gress should pay $800 and interest from February 10, 1912, on or before "ninety (90) days" and explaining why the quoted words were changed so as to read "six (6) months" testified as follows:

"They were made by me in the presence of Mr. Gress and the others for the reason that he objected to 90 days' time in which to pay the $800 dollars; stated that it was not sufficient time, something might go wrong."

The defendants' counsel adverting to the payment by their clients of $1137.90, or $4.55 more than was evidenced by the note for $333.35 given by Gress & Brakebush and the note for $800 executed by Gress, inquired:

"And what are those items? What do they cover?" The witness answered: "They cover the indebtedness of Splawn & Mills; they cover payment which it was agreed by Gress & Brakebush to pay to Splawn & Mills for their interest in the hotel, and the commission of Joseph Gentemann, the rent to date, and the indebtedness owing to the Weinhard Brewery; also an attach-

ment levied by someone against the property of W. F. Mills in the hotel part of the building to satisfy that attachment.''

An itemized statement of the sums of money so paid out was given by Mr. Hamig and canceled checks therefor were also received in evidence.

In compliance with the requirements of Sections 6069–6072, L. O. L., known as the Bulk Sales Law, Mr. Splawn and Mr. Mills on February 9, 1909, made and delivered to the defendants separate affidavits, giving the names of the creditors and the amounts due each for goods, wares, merchandise, etc., sold and delivered to them and used in conducting the business of the Enterprise Hotel.

4. The negotiations for securing possession of that building were made by Gress & Brakebush with Mr. Hamig, and neither Mr. Wessinger nor Mr. Wagner knew anything about the transaction, except as they were informed by their agent, Mr. Hamig. That the defendants paid out $1,137.90 in liquidating the debts which had been incurred and sums of money that had been paid by Mills & Splawn there is not even a shadow of doubt. Several very careful examinations of the entire testimony given at the trial, when considered in connection with the presumption which arises from the execution of the promissory note for $800, and the inference to be deduced by the change in the assignment of the land contract from ''ninety (90) days'' to ''six (6) months'' do not in our opinion overcome the testimony of Mr. Gress and Mr. Brakebush that such note was executed to guarantee the return of the furniture in the hotel, corroborated as such testimony is by the sworn statements of Mr. Gentemann, who appears to be a disinterested witness.

5. It is argued, however, that as the trial judge saw all these witnesses, and observed their manner and bearing while testifying, the conclusion which he reached ought not to be disturbed.    At the trial all testimony objected to by defendants' counsel was received without any ruling having been made thereon.    When the cause was ready to be submitted a motion was made to exclude the evidence so objected to, but no decision on that subject was rendered.    From an examination of the decree brought up for review, it is impossible to determine whether the final adjudication was based upon the assumption that the defeasance stipulation could not be contradicted by parol evidence, or whether the testimony received preponderated in favor of the defendants, and for these reasons the decision of the trial court upon the very conflicting evidence is not considered controlling herein.

The conclusion we have reached makes it unnecessary to consider what interest, if any, Mrs. Brakebush has in the land contract.    The decree is therefore reversed, and one will be entered here granting to the plaintiffs the relief prayed for in the complaint.

REVERSED.    DECREE ENTERED.    REHEARING DENIED.

McBRIDE, C. J., McCAMANT and BEAN, JJ., concur.